533 So.2d 521 (1988)
Carleen B. GILLESPIE
v.
SAFECO LIFE INSURANCE COMPANY.
85-1230.
Supreme Court of Alabama.
July 15, 1988.
Rehearing Denied September 16, 1988.
Jerry Knight of Hardwick, Knight & Haddock, Decatur, for appellant.
John S. Key and Scott Donaldson of Eyster, Key, Tubb, Weaver & Roth, Decatur, for appellee.
*522 PER CURIAM.
Carleen Gillespie, widow of the insured, Ward Gillespie, sued Safeco Life Insurance Company for the proceeds of a life insurance policy that named her as beneficiary. Mrs. Gillespie filed a three-count complaint sounding in contract and bad faith against Safeco and in tortious interference with contract rights against Equitable Variable Life Insurance Company and against William I. Davis, Equitable's agent. Gillespie and Safeco filed motions for summary judgment. At the hearing on the cross-motions, the circuit court granted Safeco's motion and entered a final judgment pursuant to A.R.Civ.P. 54(b). The claims against Equitable and Davis are not before us.
On August 24, 1972, Safeco issued a life insurance policy on the life of Ward Gillespie. The policy had a face value of $200,000 and paid an additional $150,000 in accidental death benefits. The annual premium on this policy was payable each August 24. On August 24, 1984, Mr. Gillespie did not pay the annual premium due on the policy.
In the summer of 1984, Mr. Gillespie negotiated with Davis regarding purchase of an Equitable policy on Mr. Gillespie's life. That policy was to replace the Safeco policy. Davis began negotiating the terms of an Equitable policy with Gillespie as early as June 1984. In late June, Davis inquired of Safeco regarding the cash surrender value of the policy. On July 10 Safeco informed Davis that the cash surrender value was almost non-existent. Gillespie disputed this at the time and requested a "policy audit," which was not complete until August 27, 1984. On August 7, 1984, Davis composed the following letter and mailed a copy of it to Gillespie:
"Safeco Life Insurance Company
Safeco Plaza
Seattle, Washington 98185
"Gentlemen:
"Please accept this letter as my request and authorization to cancel the above policy. Send the check for the full surrender value to me at P.O. Box 2106, Decatur, AL 35602 [Davis's address].
"/s/ Ward Gillespie"
Mr. Gillespie signed and returned this letter to Davis. He also sent his Safeco policy to Davis, requesting that he "hold the policy and letter until the change is completed on the new policy." Davis testified that he agreed to forward the undated surrender letter that Gillespie had signed, together with the Safeco policy, as soon as the Equitable policy was in place. Davis dated and mailed the letter on September 18, 1984, at a time when the Equitable policy was in force but when it was not yet in the exact form that Gillespie desired.
Safeco received the letter on September 21, 1984. Instead of cancelling the policy as requested, Safeco responded with the following:
 Final Notice
"Late Payment Offer
"Your policy has lapsed. Unless continued by authorized automatic premium loan. [sic] It will be reinstated if Safeco receives payment at its home office by 10/18/84 and during the lifetime of the persons insured.
"If you have already mailed your premium please disregard this notice."
This "late payment offer" was postmarked September 28, 1984. Mr. Gillespie suffered an accidental death on September 22, the day after Safeco received the cancellation letter. Mrs. Gillespie made a claim under the policy on October 11, 1984. Safeco denied the claim.
Gillespie's policy with Safeco contained a grace period provision, which stated:
"Grace PeriodA 31 day grace period will be allowed for payment of any premium after the first. This policy will remain in force during the grace period. If the insured dies during the grace period, a monthly premium will be deducted from the proceeds. If a premium is not paid by the end of the grace period, the policy will terminate as of the due date of the unpaid premium except as may be otherwise provided in the policy."
The policy also granted Gillespie the option to surrender the policy for cash as follows:
"Policy ValueAt any time after this policy has a cash value, the owner may *523 select one of the following options. The selection must be made by written request received by SAFECO at its home office not later than 60 days after the due date of any unpaid premium.
"1. Surrender for Cashthis policy may be surrendered for its net cash value, which will be the cash value of this policy reduced by any indebtedness to SAFECO on account of this policy. Payment of the cash value may be deferred by the company for not more than six months."
Mrs. Gillespie argues that, by ignoring Mr. Gillespie's attempt to cancel the policy and, instead, treating the policy as having lapsed, Safeco waived the right to later treat the letter as effectively cancelling the policy. She argues that, because Safeco did not treat the policy as cancelled prior to her husband's death, the policy was still in force, under the grace period provisions, when Mr. Gillespie died on September 22.
Under Ala.Code 1975, § 27-15-3, the insurance policy continues in full force during a grace period of 30 days beyond the due date of the annual premium; under the policy, there is a 31-day grace period. Because Gillespie died within the grace period, and because there is evidence that Safeco disregarded his cancellation letter, a genuine issue of material fact was presented as to whether the policy was in effect on September 22, the day of Gillespie's death, so that on the contract count Safeco was not entitled to a judgment as a matter of law and the trial court erred in granting the summary judgment for Safeco on that count. Rule 56, A.R.Civ.P. McGhee v. Mid-State Homes, Inc., 504 So.2d 279 (Ala. 1987); Ex parte Bagby Elevator & Electric Co., 383 So.2d 173 (Ala.1980); Folmar v. Montgomery Fair Co., 293 Ala. 686, 309 So.2d 818 (1975).
As to the bad faith count, however, it is clear that Safeco had at least an arguable reason for denying the claim, so that as to that count Safeco's summary judgment was proper. See Chavers v. National Security Fire & Casualty Co., 405 So.2d 1 (Ala.1981), and cases following.
The judgment is affirmed as to the bad faith count and reversed as to the contract count, and the cause is remanded.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
JONES, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., and MADDOX, BEATTY and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
I cannot agree with the majority's holding that a question of fact exists regarding the legal effect of the September 18 surrender letter, to which the policy was attached. I believe that the policy was "surrendered," as a matter of law.
Gillespie contends that Safeco solicited reinstatement of the policy during the grace period by mailing a letter, which she refers to as a "late payment offer," to the insured. The letter read as follows:
"Your policy has lapsed. Unless continued by authorized automatic premium loan. [sic] It will be reinstated if Safeco receives payment at its home office by 10/18/84 and during the lifetime of the persons insured. ..."
(Emphasis added.)
Gillespie argues that Safeco's mailing of this "late payment offer" amounted to a waiver of the opportunity to pay the cash surrender value. Although that argument is attractive, it is unsupported by the facts. On September 18, 1984, Davis forwarded the cancellation letter, which Gillespie had previously given to him, to Safeco's office in Seattle. On September 21, Safeco received the cancellation letter and Gillespie died the following day, September 22. Around September 28, Mrs. Gillespie received the above-quoted "late payment offer."
The law stated that "unless the offer provides otherwise, an acceptance made in a manner and by a medium invited by an offer is operative and completes the manifestation of mutual assent as soon as put out of the offeree's possession, without regard to whether it ever reaches the offeror." Restatement (Second) of Contracts *524 § 63 (1981). Clairelaine Garden Apartments v. Occidental Life Ins. Co. of California, 290 F.2d 456 (5th Cir.1961), Green v. American National Ins. Co., 452 S.W.2d 1 (Tx.Civ.App.1970), and Goddard v. Equitable Life, 27 Ala.App. 371, 172 So. 678 (1937), all stand for the proposition that the election to take the cash surrender value was binding when made, on September 18, when the surrender letter was mailed by Gillespie's agent to Safeco. As the district court said in United States v. Continental Casualty Co., 245 F.Supp. 871, 873 (E.D. La.1965), "[W]hen an offer fails to specify the manner in which acceptance should be made, the offeree renders the contract binding the moment he transmits an acceptance in the same manner the offer was received, regardless of the receipt by the offeror." Citing 1 Corbin on Contracts, § 78, p. 333 (1963 ed.); 1 Williston on Contracts, § 81, pp. 266-67 (3d ed.); Restatement (Second) of Law of Contracts, § 67 (1981).
Because Gillespie elected to take the cash surrender value of the policy on September 18, 1984, and was bound thereby, as a matter of law, his widow could not thereafter attempt to revoke his acceptance. The proffered "late payment offer" delivered September 28, six days after Gillespie's death, and ten days after surrender of the policy, was without legal effect. A contract between Gillespie and Safeco for payment of the cash surrender value was formed on September 18, and Safeco was obligated to pay that amount. The "late payment offer" sent to the deceased constituted an offer for an accord. "An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty." Restatement (Second) of Contracts, § 281 (1981). Safeco, as obligor, had a duty to pay the cash surrender value of the policy under the September 18 contract. Under the proposed accord it sought to grant Gillespie the opportunity to continue his insurance coverage and to relieve itself of the obligation to pay the cash surrender value to him. In order for this accord to be effective, Gillespie himself would have had to agree to continue payments on the insurance contract. This second offer by Safeco required payment of the premium before October 18 and during Gillespie's lifetime. Had Gillespie survived, he could have availed himself of this new offer until that date. Because this offer was not received until after his death, it is without legal effect. "It is a well-established principle of contract law that death of an offeree terminates a revocable offer so that any subsequent acceptance by the offeree's administrator is ineffective." Estate of Watts v. Dickerson, 162 Cal.App. 3d 1160, 208 Cal.Rptr. 846, 848 (Dist.Ct. App.1984). Citing 1 Corbin on Contracts § 54, pp. 230-31 (1963); 1 Williston on Contracts § 62, p. 207 (3d ed. 1957); Restatement (Second) of Contracts §§ 36(d), 48, 52 (1981). Under the above-stated principles, this offer to allow Gillespie to continue payments under the insurance contract was void ab initio because of his death. His widow was without power to accept the offer, and she could not alter the obligation of Safeco to pay the cash surrender value due under the September 18 contract.
Gillespie contends that the dispatch of the surrender letter by Davis, which was signed by Mr. Gillespie and which accompanied the Safeco policy, was unauthorized and therefore was an ineffective attempt to exercise the surrender option. Gillespie's argument in this regard is that Davis was authorized only to forward the surrender letter when the Equitable policy was in proper form and in effect. When Davis forwarded the surrender letter to Safeco he had not yet collected the first quarterly premium from Gillespie. It is also apparent from the record that the Equitable policy did not reflect the benefits and features that Gillespie desired. This Court finds these factors irrelevant, however.
It is nowhere alleged that Safeco had notice that Davis was acting as an agent for Gillespie. The surrender letter was in proper form, signed only by Gillespie, and was accompanied by the policy. In short, the surrender was in the form required by the Safeco policy and Safeco had no option other than to pay the obligation. Safeco *525 had no notice or knowledge of the agency of Davis and therefore could not question his authority.[1] Davis was employed by Gillespie to acquire alternative coverage with Equitable and to cancel the more expensive Safeco policy, a job which was complete prior to Gillespie's death.
The deceased may have elected an option that was not in his best interest in view of the fact that he died soon afterwards, but I believe that Gillespie surrendered his Safeco policy, and that Safeco, therefore, had no obligation to pay the death benefits provided for by the policy.
I would affirm the judgment of the trial court; consequently, I must respectfully dissent.
TORBERT, C.J., and BEATTY and STEAGALL, JJ., concur.
NOTES
[1] I note that Equitable paid over $320,000 to Mrs. Gillespie on the death of the insured.