**Beverly L. SCOTT, Plaintiff,**

v.

**UNITED OF OMAHA LIFE INSURANCE COMPANY, a corporation, Defendant.**

**Civ. A. No. 89–H–1160–N.**

United States District Court, M.D. Alabama, N.D.

July 10, 1990.

Tipler and Tipler, John M. Pennington, Andalusia, Ala., for plaintiff.

Bradley, Arant, Rose & White, Braxton Schell, Jr., M. Christian King, Phillip J. Carroll, III, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION AND ORDER

HOBBS, Chief Judge.

Plaintiff Beverly Scott's husband died in an automobile accident on October 13, 1987. Because defendant United of Omaha Life Insurance Company failed to pay death benefits on her husband's life insurance policy, the plaintiff filed this action alleging breach of contract, fraud and bad faith refusal to honor an insurance contract. The defendant has filed a motion for summary judgment on all claims. Plaintiff has filed a cross-motion for summary judgment on the breach of contract claim.

This Court has jurisdiction by reason of the complete diversity of citizenship of the parties under 28 U.S.C. § 1332(a)(1).

### FACTS

Defendant issued a whole life insurance policy to Anthony Scott on April 1, 1984. At the time of application, Mr. Scott was a munitions inspector with the United States Air Force. Monthly premium payments were due on the first of each month and were taken directly from Scott's government pay check under a government allotment payment plan provided for members of the military.

On August 25, 1987 Mr. Scott telephoned United Omaha, notifying them that he had left the Air Force and that premium notices for the month of September and following months were to be sent to him in Andalusia, Alabama. This phone conversation was followed up with a memorandum on September 2, 1987 from United Omaha's military sales office to United Omaha's regional office in Columbus, Georgia, notifying the regional office of Scott's change in status and address. Nevertheless, no premium notice was sent to Scott for his September 1, 1987 premium payment. Instead, on September 21, 1987, nearly a month after Scott told United Omaha of his change in status, United Omaha wrote Scott warning him that his September government allotment had not been received.

In addition, the September 21, 1987 letter informed Scott of various alternative payment methods he could elect. The letter concluded by telling Scott that

> It will take some time to complete the arrangements for your new payment plan, so it is important that you also return $26.62 with your instructions. If your reply is not received by 10/16/87: Policy 3886548 will lapse at the end of the grace period.

"Grace period" is defined in the policy as thirty-one days following the due date on the unpaid premium. On October 13, 1987, before any response was sent to United Omaha, Scott was killed in an automobile accident.

Mrs. Scott had her funeral director call United Omaha on October 14, 1987 to find out what she should do concerning her husband's life insurance policy. The representative told the funeral director that he would get back in touch with him, which he did sometime around October 20, 1987. On October 29, 1987, United Omaha sent plaintiff a letter informing her that her husband's policy lapsed 31 days after his September 1, 1987 premium was due and that, because her husband died after the end of this grace period, there was no coverage.

## DISCUSSION

Summary judgment can be entered on a claim only where "there is no genuine issue as to any material fact and [where] the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In this case, the parties concede that the relevant facts are not in dispute. Both plaintiff and defendant ask that this dispute be resolved on their motions for summary judgment. The only controversy lies in the effect of the September 21, 1987 letter from United Omaha to Mr. Scott.[1]

Alabama courts traditionally have frowned upon insurance policy forfeitures. This is particularly true where the insurance company takes some affirmative action which contributes to the claimed forfeiture.

> Conditions in a policy of insurance, limiting or avoiding liability, are strictly construed against the insurer, and liberally in favor of the insured.... The courts, not favoring forfeitures, are usually inclined to take hold of any circumstances which indicate an election to waive a forfeiture. A waiver may be created by acts, conduct or declarations.... If the company, after knowledge of the breach entered into negotiations or transactions with the assured, which recognize and treat the policy as still in force, or induces the assured to incur trouble or expense, it will be regarded as having waived the right to claim the forfeiture.

*Queen Insurance Co. v. Young,* 86 Ala. 424, 430, 5 So. 116 (1888). For example, in *Henderson v. Nationwide Life Insurance Co.,* 56 Ala.App. 329, 321 So.2d 671 (Ala. Civ.App.), *cert. denied* 295 Ala. 405, 321

---

1. Whether or not a writing is ambiguous is for the Court to determine. *Upton v. Mississippi Valley Title Insurance Co.,* 469 So.2d 548, 554–55 (Ala.1985). Likewise, once it is determined that a writing is ambiguous, it is the province of the court to construe the writing where, as in this case, its interpretation must come from the writing itself, without the aid of evidence as to the intent of the parties. *Id., quoting Aetna Life Insurance Co. v. Hare,* 47 Ala.App. 478, 256 So.2d 904 (1972); *see also Hancock v. New York Life Insurance Co.,* 899 F.2d 1131, 1135 (11th Cir.1990).

So.2d 675 (1975), an Alabama court held that an insurance agent's representation to an insured that he had one week to pay past due premiums waived the insurance company's right of forfeiture. In that case, the insured had failed to pay premiums for September, October and November. The agent contacted the insured on November 23 and gave him one week to pay the past due premiums. On November 24 a person covered under the insured's policy was killed. The insurance company denied coverage, taking the position that the policy had been cancelled as of September 1 because of unpaid premiums. The court held that, although the one week extension was not an express waiver of forfeiture rights, it established a record of conduct inconsistent with the insurer's intention to enforce its right of forfeiture such that the right was impliedly waived.

> To us, the statement ... to the effect that [the insured] had been given one week from the date of the telephone call to pay three prior months' premiums clearly implies that, if the premiums were paid within that week, policy coverage would continue in force and effect as if the payment had been made as originally scheduled. Thus, cancellation of the policy was deferred until the expiration of the one-week period. This, as we see it, is a clear implied waiver of the forfeiture.

*Henderson*, 321 So.2d at 673. The court concluded that the insurance company owed benefits under the policy for the November 24 death.

In the instant case, the plaintiff argues that the representations in the September 21, 1987 letter unilaterally modified the insurance contract, extending the grace period on Mr. Scott's policy to October 16, 1987. Under usual circumstances, the grace period on Mr. Scott's policy would have ended on October 1, 1987, 31 days after his September 1, 1987 premium was due. This case, however, does not present usual circumstances. Despite being warned that Mr. Scott's September premium payment would not be coming out of a government pay check, the defendant failed to inform Mr. Scott of alternative payment methods until three weeks after the premium payment was due. When United Omaha finally contacted Mr. Scott, defendant told him that it would accept payment of his September premium payment as late as October 16. Under these circumstances, where the insured was changing his payment method, where United Omaha was dilatory in executing this change, and when, in finally executing the change, United Omaha affirmatively represented that the insured had until October 16 to make the September payment, the Court believes that this representation clearly implied that the policy would remain in force until October 16. *Henderson*, 321 So.2d at 673.

█ The Court does not accept the defendant's argument that its failure to expressly alter the grace period in the September 21 letter means that the policy was not altered and that a lapse occurred as of October 1, 1987. Thus, under the insurance company's interpretation of its letter, which provided that because of the new payment plan Mr. Scott had until October 16 to return his premium payment, Mr. Scott's family would be without insurance protection from October 1, 1987 to October 16, 1987. It is difficult to conceive of how an insurance company, much less an insured, would think it prudent for one who had been paying premiums for several years deliberately to go without insurance for this period. At a minimum of fairness, if the insurance company desired to convey such a message by its letter, it should have told Mr. Scott that its offer left Mr. Scott's family without any coverage for these sixteen days. If the insurance company intended to treat Mr. Scott as uninsured after October 1, a warning to this effect was required, rather than the soothing invitation to make a payment after the policy had lapsed.

Furthermore, under the insurance company's interpretation of its letter, Mr. Scott's payment would be a reinstatement of the policy, but reinstatement by the terms of the policy requires 1) a written application; 2) evidence of insurability; 3) payment of past due premiums with inter-

**1093**

est; and 4) the payment or reestablishment of any policy loan with interest. The September 21, 1987 letter, however, makes no mention of the reinstatement process.

Absent notification of a coverage interruption or a need to reinstate his policy, Mr. Scott had a reasonable expectation that the insurance company by letter was extending his grace period. The insurance company has an interest in seeing that policies do not lapse and it has the right to extend the time of payment to avoid lapses. The letter reasonably construed by Mr. Scott did exactly this. At a minimum, the September 21, 1987 letter rendered the meaning of the term "grace period" vague. Because vague terms written by the insurer consistently have been construed against the writer and liberally in favor of the insured, *see Alabama Insurance Guaranty Assoc. v. Kinder–Care, Inc.*, 551 So.2d 286 (Ala.1989); *Alabama Insurance Guaranty Assoc. v. Magic City Trucking Service, Inc.*, 547 So.2d 849 (Ala.1989), the defendant's position fails.

The Court finds the grace period on Scott's policy was extended to October 16, 1987. *Henderson*, 321 So.2d at 674.[2] The defendant acknowledges that under the terms of the policy the plaintiff would be entitled to benefits less premiums due if her husband died within the grace period.[3] Pollard Depo. pp. 81–82. Mr. Scott died on October 13, 1987, three days before the extended grace period expired, entitling plaintiff to the benefits due under the policy, less premiums due from September and October. Accordingly, the plaintiff's motion for summary judgment as to the breach of contract claim is GRANTED and defendant's motion for summary judgment on the same is DENIED.

As to the bad faith and fraud counts, however, defendant's motion for summary judgment is GRANTED. It is clear that United Omaha had at least an arguable reason for denying the plaintiff's claim, precluding liability for bad faith refusal to honor the contract. *Gillespie v. Safeco Life Insurance Co.*, 533 So.2d 521, 523 (Ala.1988). Similarly, under Alabama law the failure to perform a promise is not of itself sufficient to support a charge of fraud. *Brown–Marx Associates, Ltd. v. Emigrant Savings Bank*, 703 F.2d 1361, 1370 (11th Cir.1983), *citing Evans v. Adam's Rib, Inc.*, 289 Ala. 377, 267 So.2d 448 (1972); *McAdory v. Jones*, 260 Ala. 547, 71 So.2d 526 (1954). Absent any evidence from the plaintiff that the representation was made with the intent to deceive, the fraud count fails.

A judgment in accordance with this opinion will be entered separately.

DONE and ORDERED.

### JUDGMENT

In accordance with the attached memorandum opinion and order, it is ORDERED, ADJUDGED and DECREED that plaintiff, Beverly L. Scott, have and receive from defendant, United of Omaha Life Insurance Company, the sum of $25,603.62 (the face value of the insurance policy less two months of premium payments) plus legal interest from October 13, 1989 to entry of judgment.

It is further ORDERED that court costs incurred in this proceeding be taxed against defendant, for which execution may issue.

2. Any argument that the rule announced in *Lett v. Liverpool & London & Globe Ins. Co.*, 213 Ala. 488, 105 So. 553 (1925) applies in this case must be rejected. In *Lett,* the court held that requests for premium payments after a policy has been suspended operate as an invitation for reinstatement rather than waiver of forfeiture. In that case, however, the court specifically found that neither the insurance company nor its agent made any representation which could possibly

have been construed as a waiver of forfeiture or extension of the period of payment.

3. The insurance policy provides that "[t]his policy will remain in force during the grace period. If the Insured dies on the premium due date or during the grace period, the premium for the policy month in which death occurs will be deducted in determining the death benefit."