SANDRA FLOOD *vs.* MIDLAND NATIONAL LIFE INSURANCE
COMPANY; ARTHUR B. CHANDLER, third-party defendant.

Plymouth. November 8, 1994. - December 14, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Practice, Civil,* Summary judgment. *Insurance,* Life insurance, Premiums,
Grace period. *Contract,* Insurance. *Consumer Protection Act,*
Insurance.

An insurance company's unilateral special offer to accept late payment of
the premiums due on a life insurance policy beyond the elapsed grace
period stated in the contract if certain conditions were met, was ac-
cepted by the beneficiary's tender of the payment; the insurance com-
pany was bound by the clear terms of the offer and thus waived any
other requirements associated with reinstatement of a lapsed policy.
[182-183]

The refusal of an insurance company to pay under the terms of a certain
life insurance policy did not constitute an unfair business practice in
violation of G. L. c. 93A, where the issue ultimately raised by the bene-
ficiary's civil action was a matter of first impression in this court. [183-
184]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 9, 1991.

The case was heard by *Richard S. Kelley,* J., on motions
for summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Martin J. Drilling* for the plaintiff.

*Devra G. Bailin* for Midland National Life Insurance
Company.

GREANEY, J. On July 9, 1991, the plaintiff, Sandra Flood,
commenced this action in the Superior Court against the de-
fendant, Midland National Life Insurance Company (Mid-
land), alleging that Midland was in breach of contract, and

had violated G. L. c. 93A (1992 ed.) by failing to honor her claim as beneficiary under the life insurance policy of her deceased business partner, Robert E. Desrochers. The parties filed cross motions for summary judgment. A judge of the Superior Court allowed the defendant's motion and denied the plaintiff's motion. The plaintiff timely appealed. We transferred the case to this court on our own motion. We reverse the judge's orders and remand the case for further proceedings consistent with this opinion.[1]

The following are the material, undisputed facts. The plaintiff and Desrochers had jointly inherited Belben's Service Station, Inc. They operated the service station as equal owners. As one of her responsibilities, the plaintiff paid the bills of the business. On September 8, 1989, Arthur Chandler (Chandler), an insurance agent, suggested to the plaintiff and Desrochers that both should purchase life insurance policies to protect their respective spouses in the event of the death of either partner. The plaintiff and Desrochers decided to apply to Midland for term life insurance policies in the amount of $150,000 on the life of each of them, each naming the other as beneficiary.[2]

The plaintiff and Desrochers filled out applications for term life insurance policies with Midland. Desrochers's application stated that he was a partner in Belben Service Station, Inc., and worked as a mechanic in the business. As part of

---

[1]No proper order for judgment was made in the case, and no judgment has been entered. The defendant had filed a third-party complaint against Arthur Chandler, an insurance agent, seeking a determination that Chandler was solely liable to the plaintiff, or, if Midland was found liable, that Chandler fully reimburse it for the damages assessed. That complaint was not addressed by the judge. As Midland points out, when the judge allowed Midland's motion for summary judgment, and denied the plaintiff's motion, Midland no longer had a basis for its claims against Chandler. In effect, the decision on the cross motions for summary judgment disposed of all the claims in the case. The parties have treated the judge's orders on their respective motions as a final judgment. In these circumstances, we shall do the same. See *G.J.T., Inc.* v. *Boston Licensing Bd.*, 397 Mass. 285, 286 n.3 (1986).

[2]It appears that this arrangement was designed to furnish the surviving owner with funds sufficient to buy out the interest of the deceased owner.

the application process, he was required to undergo a physical examination, including an electrocardiogram, the results of which were abnormal. As a consequence, Midland rated Desrocher's risk as "F," and issued him a "special class" policy, effective October 1, 1989. The premium was set at $545 a month for the initial period; the maximum monthly premium was set at $669.50. Once the initial premium payments were made (with funds from the business), payments were deducted by an automatic withdrawal system from Belben's business checking account on the first day of each month.

Desrochers was the insured and the owner of the policy at issue, which named "Sandra L. Flood — Partner" as primary beneficiary. Under the policy, Midland agreed to pay the beneficiary the proceeds of the policy on "due proof of the Insured's death while this Contract is in force." Premiums were due on the first day of each month. The policy further specified that, if Midland did not receive payment on the due date, the policy would be in default. It would remain in effect, however, during a grace period of thirty-one days, after which time the policy would terminate. After the expiration of the grace period, reinstatement was available if the following conditions were met:

"a.   [Desrochers sent Midland] a written request not more than five years after the Date of Default;

"b.   [Desrochers provided Midland] with any facts [Midland] [needed] to satisfy [Midland] of the insurability of the insured.

"c.   All overdue premiums, with compound interest at 6% per year from the Date of Default to the Date of Reinstatement, [were] paid."[3]

___

[3]The policy provided the following example to illustrate reinstatement:

"Suppose a premium due May 1st is not paid on time. The Contract will stay in force until June 1st whether the premium is paid or not. If the premium is not paid by June 1st, You must meet all the [conditions for reinstatement] if You want to reinstate the Contract."

The plaintiff and Desrochers thought the monthly premium charged by Midland was too high. They asked Chandler to see whether he could obtain comparable coverage from another source at a more reasonable rate. On November 11, 1989, Desrochers applied to Surety Life Insurance Company for $150,000 worth of life insurance. The policy with Surety was delivered to Desrochers on December 22, 1989, and went into effect on December 28, 1989.

At some point in December, 1989, Desrochers requested that the automatic checking account deductions covering the premiums for the Midland policy be stopped, and that he be billed directly for the coverage. On December 21, 1989, Chandler wrote to Midland asking it to "cancel" Desrochers's policy as of January 1, 1990, and not to draw any more premium payments from Belben's business checking account. The premium due on January 1, 1990, was, nonetheless, automatically withdrawn from the account.

On January 10, 1990, Midland sent a notice to Desrochers, in care of Belben's Service Station, informing him that, as of that date, the company had "stopped the automatic draft from your bank and have changed it to monthly direct bill." The notice, a form letter, further informed Desrochers that Midland was required "to send premium notices until [the] policy expire[d]," and that, "[i]f no further premium payments [were] made, [Desrochers] will receive a lapse notice notifying [him] that [his] policy ha[d] lapsed." The premium payment due on February 1, 1990, was not made.

On February 14, 1990, Desrochers became ill and went into a coma. The grace period for payment of the premium due February 1, 1990, on his Midland policy, expired on or around March 3, 1990.

On March 9, 1990, Midland sent what it called, in capital letters, a "SPECIAL LATE PAYMENT OFFER" to Desrochers, again in care of Belben's Service Station. The "offer" contained these terms:

> "The past due premium will still be accepted without interest charge or other requirements, if during the lifetime of each person insured under this policy . . . and on or before the date shown under 'offer expires', this notice is received by the company with a remittance for the amount due."

The expiration date for the offer was March 22, 1990, and the amount shown as due was $1,202 (covering the February and March, 1990, premium payments). Appearing on the face of the offer, in smaller capital letters, was the notation "GRACE PERIOD EXPIRED."

On March 12, 1990, the plaintiff sent a check for $1,202, drawn on the Belben's Service Station checking account, next day delivery, to Midland. The check was accepted and deposited by Midland. Subsequently, Midland sent a premium payment notice for $601, due April 1, 1990, to Desrochers, in care of Belben's Service Station. On March 20, 1990, Desrochers died, without having regained consciousness. On the same day, the plaintiff sent Midland payment for the April 1, 1990, premium on Desrochers's Midland policy.

The plaintiff requested payment under the terms of Desrochers's insurance policy. Midland refused payment on the ground that its special late payment offer of March 9, 1990, was an offer to reinstate a policy which had already lapsed, and that the right of reinstatement was personal to Desrochers and could not be exercised by the plaintiff as policy beneficiary.

A case may be resolved by summary judgment when there are no material issues of fact in dispute, "and the moving party is entitled to judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Thattil* v. *Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc.*, 415 Mass. 381, 385 (1993); *Miles* v. *Aetna Casualty & Sur. Co.* 412 Mass. 424, 426 (1992). At issue is the legal effect of Midland's March 9, 1990, special late payment offer to Desrochers, when read in conjunction with the

terms of Desrochers's policy, a question appropriate for resolution by a court by means of summary judgment. See *Cody v. Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982).

1. Midland contends that Desrochers's policy lapsed on the expiration of the grace period. According to Midland, the special late payment offer (offer) was an offer to reinstate a lapsed policy, and, as such, was personal to the insured, and could not be accepted by the beneficiary without the insured's knowledge or authorization. See 18 G. Couch, Insurance § 69:25, at 94 (2d ed. 1983) ("The insured is ordinarily the only person entitled to apply for a revival or reinstatement of the policy").[4] We disagree and conclude that Midland unilaterally extended the agreed time for receipt of payment, and that this offer could be (and was) accepted by the plaintiff's act of payment in accordance with its terms.

The language of the offer was precise and clear. It stated that "[t]he past due premium will still be accepted," meaning that the time for payment had been extended beyond the contractual grace period, if certain conditions were met. Those conditions were equally precise and required that (1) payment was made during the lifetime of the insured; (2) before the expiration of the offer; and (3) in the amount shown as due. The language of the offer was indifferent as to

---

[4] In the alternative, Midland argues that the policy was canceled by mutual consent of the parties to the contract (Midland and Desrochers) when Midland received notice of its insured's intent to cancel, and could only be reinstated in accord with the terms specified in the policy. An essential premise of this argument is that the subsequent premium due notices and the special late payment offer were wholly without legal effect. This assertion is plainly at odds with the contract's provision for a grace period during which the policy would remain in effect. Midland would not have declined to accept payment, if offered, on the premium notices it mailed out after it received notification of cancellation. For this reason alone, the argument must be rejected.

In addition, *Knapp v. Protective Life Ins. Co.*, 927 F.2d 993 (7th Cir. 1991), on which Midland relies, does not support its argument. In the *Knapp* case, the court was concerned with determining whether, under the terms of the policy, its physical surrender was required for its cancellation. The insured had already executed an absolute assignment agreement placing all rights in the policy at issue in a successor insurer.

who could make the payment. All of the explicit conditions in the offer were met by the plaintiff's payment.

The offer did not use the term "reinstatement." It expressly waived payment of compound interest, one of the contractual requirements for reinstatement. The reference to "other requirements" which Midland was willing to waive, is logically a reference only to the other requirements for reinstatement, namely, that proof of continued insurability be provided, and that the insured request reinstatement in writing. It would be anomalous to permit Midland to insist on compliance with a condition which it concedes is associated only with reinstatement (payment only by, or on authority of, the insured), when Midland's offer expressly waives all of the other requirements associated with reinstatement.[5]

"[An] insurance company has an interest in seeing that policies do not lapse and it has the right to extend the time of payment to avoid lapses." *Scott* v. *United of Omaha Life Ins. Co.*, 749 F. Supp. 1089, 1093 (M.D. Ala. 1990). See generally 6 G. Couch, Insurance § 32:114 (2d ed. rev. 1985 & Supp. 1994). Because the right to extend unilaterally the

---

[5] In support of its contention that the offer was an offer to reinstate an insurance contract which had lapsed, Midland relies on *Counties Contracting & Constr. Co.* v. *Constitution Life Ins. Co.*, 855 F.2d 1054 (3d Cir. 1988). In that case, the plaintiff construction company had insured the life of one of its employees. When the annual premium (and the interest due on various loans taken out against the policy) was about two months in arrears, the insurer first mailed a notice reminding the company that the insurance ended at the close of the grace period (already past) and urging the company to pay the premium and the loan payments to avoid loss of the insurance. About a month later, four days after the insured had died, the insurer mailed a final notice, stating: "To keep this policy in force, we will need a payment . . . within ten days." The company, which had gone into bankruptcy during the initial grace period, made no attempt at payment in response to these communications. *Id.* at 1056.

In the *Counties* opinion, the court concluded that the communications quoted above constituted "only an offer to reinstate the policy." *Id.* at 1061. These communications bear very little resemblance to the clear and definite offer made by Midland. We do not find this opinion persuasive authority for interpreting Midland's communication as an offer for reinstatement of a lapsed policy.

time for payment belongs to the insurer, "[a]n insurer must be able to specify the terms of such an offer." *Millard* v. *New Jersey Life Ins. Co.*, 709 F. Supp. 29, 32 (D. Mass. 1989). When an insurer has made such an offer, it is, of course, bound by the terms contained in the offer. It may not, thereafter, insist on conditions other than those it has stated. See *Sherwood* v. *Midland Nat'l Life Ins. Co.*, 560 P.2d 329, 331 (Utah 1977). As a general rule, "payment of insurance premiums is not necessarily the personal act of the insured." 6 G. Couch, Insurance, *supra* at § 31:112 (collecting cases). If Midland intended to extend an offer personal to its insured, the offer should have so specified.

Our conclusion is in accordance with the decision in *Sherwood* v. *Midland Nat'l Life Ins. Co.*, *supra*, the only case brought to our attention in which an insurer made an offer in terms similar to those of the special late payment offer made by Midland. In the *Sherwood* case, the insured (who had suffered a disabling heart attack after expiration of the grace period on his disability insurance policy) received a notice which provided, in pertinent part: "Your grace period expired 30 days after the due date shown, but this offer gives you an additional fifteen days to pay." The court in the *Sherwood* case concluded that this was an offer to extend the grace period, and not an offer for reinstatement in accordance with the provisions of the insurance contract. For this reason, requirements related to reimbursement were "not applicable in this matter." *Id.* at 331. Similarly, we conclude that the offer made by Midland extended the grace period for payment of the premiums on Desrochers's policy, and that the offer could be, and was, accepted in keeping with its terms by the plaintiff.[6]

2. We reject the plaintiff's further contention that Midland's refusal to make payment under Desrochers's policy constituted an unfair business practice in violation of G. L. c.

---

[6]It follows, as matter of course, that the plaintiff committed no fraud by accepting Midland's offer and extending payment on the policy to Midland.

93A. The issue raised by the plaintiff's complaint is one of first impression for this court. See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 14 (1989). Midland could reasonably have concluded that it was not required to provide coverage when the insured had indicated that he desired to cancel the policy, and payment on the policy was made after expiration of the grace period and after the insured had suffered a catastrophic medical event. See *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 754 (1993). Midland's decision to contest liability did not amount to an unfair or deceptive practice.

3. The judge's orders denying the plaintiff's motion for summary judgment and granting the defendant's summary judgment motion are vacated. Separate and final judgment is to be entered for the plaintiff on her breach of contract claim in the amount of the policy with interest, and for the defendant on the plaintiff's claim under G. L. c. 93A. See Mass. R. Civ. P. 54(b), 365 Mass. 820 (1974). The defendant's third-party complaint against Chandler, on which no judgment entered, see note 1, *supra*, remains open for resolution and is to be the subject of such further proceedings as may be appropriate in the Superior Court.

*So ordered.*