Sherman, P.J.
This is an action in two counts for negligence and breach of warranty to recover for injuries sustained by the plaintiff while skiing on a trail operated by defendant Nashoba Hill Corporation (“Nashoba”) on land owned by defendant Pam F., Inc.[3] The trial court allowed the defendants’ motions for summary judgment, and the plaintiff thereafter perfected a Dist./Mun. Cts. R.A.D.A., Rule 8B appeal to this Division.
Viewed in the light most favorable to the plaintiff, G. S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991); Liberty Mut. Ins. Co. v. National Consol. Warehouses, Inc., 34 Mass. App. Ct. 293, 296 (1993), the parties’ Dist./Mun. Cts. R. Civ. P., Rule 56 materials indicate that at the time of her accident, the plaintiff was thirteen years old and had been skiing for ten years. She had taken lessons at a number of ski areas, and skied approximately twelve times a year on intermediate and expert slopes. The plaintiff considered herself to be an experienced skier, understood that there are unavoidable risks in the sport of skiing, and was cognizant of the duties imposed upon a skier to ascertain the difficulty level of any given trail, to ski only on the maintained areas or portions of the trail, to control speed and direction, and to avoid collisions with other skiers or objects on the trail.
On February 2, 1991, the plaintiff participated in a YMCA sponsored ski lesson program at Nashoba where the plaintiff had skied for the previous two seasons. She had also taken lessons at Nashoba, where she was ranked as an expert skier by her instructors, and was familiar with the varying difficulty levels of Nashoba trails. Following a morning lesson on the day in question, the plaintiff proceeded with friends to “Nashoba Trail,” a slope rated as “more difficult” and clearly marked as such with the appropriate “blue square” safety sign. The plaintiff had skied on “Nashoba Trail” on several occasions.
At a point about one-quarter of the way down “Nashoba Trail,” the plaintiff hit clumps of ice in the middle of the trail, lost control of her speed and was unable to negotiate a downhill curve. She skied off the edge of the trail, down an embankment and into the woods where she sustained numerous injuries when she crashed into downed trees and a boulder. It is the plaintiff’s contention that her injuries were proximately caused by Nashoba’s negligent failure to provide fencing or other protective barriers along the border of the trail, and to remove trees, rocks and other materials from the woods adjacent to the trial.
1. It is clear from the parties’ Rule 8B agreed statement that the factual circum *141 stances of the plaintiff’s mishap are undisputed, and that the nature and scope of Nashoba’s duly to the plaintiff are dispositive of her claims herein. Generally, the question of a defendant’s duty of care is one of law for the trial court. See, e.g., Kelly v. Avon Tape, Inc., 417 Mass. 587, 589 (1994); Cremins v. Clancy, 415 Mass. 289, 292 (1993). Where, as in the instant case, the defendant’s duty is defined by statute, the proper construction of said statute and delineation of the defendant’s duty present questions of law only. See Casey v. Massachusetts Elec. Co., 392 Mass. 876, 879 (1984); The Framingham, Clinic, Inc. v. Zoning Board of Appeals of Framingham, 382 Mass. 283, 290 (1981). Summary judgment was, therefore, the appropriate procedural vehicle for the adjudication of the plaintiff’s claims. See generally, Flood v. Midland Nat’l Life Ins. Co., 419 Mass. 176, 180-181 (1994); Daroza v. Arter, 416 Mass. 377, 384 (1993).
2. Contrary to the plaintiff’s contention, her action against Nashoba for personal injuries arising from recreational skiing on Nashoba’s slopes is necessarily governed by Sections 71H-71S of G.L.c. 143. G.L.c. 143, §71P; Atkins v. Jiminy Peak, Inc., 401 Mass. 81, 83-84 (1987). See also Grass v. Catamount Development Corp., 390 Mass. 551 (1983) (G.L.c. 143, §§71H-71S governs actions for personal injuries, but not for -wrongful death). The statutes were enacted in 1968 not only to make the sport of skiing “safer by requiring operators to implement greater safety precautions,” but also “to decrease the economic threat to the ski industry by limiting an operator’s liability.” Tilley v. Brodie Mountain Ski Area, Inc., 412 Mass. 1009, 1010 (1992), quoting from Atkins v. Jiminy Peak, Inc., supra at 84.
The general duties imposed by the Legislature upon ski area operators under Section 71N of G.L.c. 143 are thus qualified by the duties and risks skiers are statutorily deemed to assume under Section 710.
Pursuant to G.L.c. 143, §71N, a ski area operator is generally
responsible for the maintenance and operation of ski areas under its control in a reasonably safe condition or manner; provided however, that ski area operators shall not be liable for damages to persons or property, while skiing, which arise out of the risks inherent in the snort of skiing [emphasis supplied].
With respect to such inherent risks, Section 710 provides in relevant part:
A skier shall be presumed to know of the existence of certain unavoidable risks inherent in the sport of skiing, which shall include, but not be limited to, variations in terrain, surface or subsurface snow, ice conditions or bare spots, and shall assume the risk of injury or loss caused by such inherent risks [emphasis supplied].
Section 710 also enumerates the duties imposed upon skiers, which include the following:
A skier shall maintain control of his speed and course control at all times,...
No skier shall ski on any ski slope or trail or portion thereof which has been designated closed, nor ski on other than an identified trail, slope or ski area. Any person skiing on other than an open slope or trail within the ski area shall be responsible for any injuries resulting from his action.
Construing Sections 71N and 710 together to give a practical and harmonious effect to all provisions, McHerron v. Jiminy Peak, Inc., 38 Mass. App. Ct. 593, 594 (1995), it is clear that Nashoba is statutorily exempt from liability herein. The plaintiff’s injuries directly resulted from specific skiing risks, and from the failure to meet specific responsibilities, expressly imposed by statute upon the plaintiff rather than Nashoba; namely, the risk of ice conditions, as well as the failure both *142 to control speed and direction and to remain on maintained portions of the slope.
There is no merit to the plaintiffs contrary and somewhat contradictory contention that her injuries resulted not from ice conditions, the usual risk of which is falling in place on the slope according to the plaintiff, but from siding off the slope into woodland debris, which the plaintiff suggests is an unusual occurrence neither enumerated in G.L.c. 143, §710, nor intended by the Legislature to constitute an inherent risk of skiing, but still an event sufficiently foreseeable for the plaintiff to have protected against it in the exercise of due care. The short answer to the plaintiffs argument is that the risks and duties statutorily imposed on the skier by §710 are phrased in terms of conditions, such as terrain, snow or ice surfaces and the skier’s own conduct, rather than particular consequences of the same. There is thus nothing in the statute to support the plaintiffs curious contention that the Legislature intended the risks posed by ice conditions to include falling on the slope, but to exclude slipping off the slope. Second, §710 expressly imposes responsibility for injuries sustained while “skiing on other than an open slope or trail within the ski area” on the skier, and thereby exempts the ski area operator from liability for the same. It is undisputed that the plaintiff sustained her injuries when she skied off the trail, into the woods.[4]
Finally, there would be no issue herein of protective fencing or barriers on “Nashoba Trail” if the plaintiff had maintained control of her speed, direction and course, thereby avoiding the edge of the trail and the woodland areas beyond. As Section 710 expressly obligates the skier to maintain such control, the G.L.c. 143 statutory scheme can be reasonably interpreted only as imposing responsibility for the consequences of a failure to discharge the skier’s duty on the skier.[5]
We conclude, therefore, on the basis of the undisputed circumstances of the plaintiff’s accident, that the provisions of G.L.c. 143, §§71N and 710 preclude any recovery against Nashoba for the injuries sustained by the plaintiff. The trial court’s entry of summary judgment for the defendant is affirmed. Appeal dismissed.
So ordered.

It is unnecessary to address the plaintiff’s claims against Pam E, Inc. which the plaintiff has not pursued on this appeal.

This §710 provision is consistent with the scope of the general duty imposed on Nashoba by §71N to maintain “ski areas” under its control in a reasonably safe condition, which cannot be reasonably interpreted as encompassing the wooded area where the plaintiff was injured which was adjacent to, but beyond the boundaries of, “Nashoba Trail.” Section 711 of G.L.c. 143 defines a “ski area” as “all of the slopes and trails under the control of the ski area operator...” The term “ski slope or trail” is designated in the same section as “an area designed by the [ski area operator] ... for use by the public in furtherance of the sport of siding [emphasis supplied].” It is undisputed herein that the wooded area where the plaintiff was injured was not an area designed by Nashoba for recreational use by its skiing patrons.

It is thus unnecessary to consider the plaintiff’s argument that Nashoba’s §71N general duty of reasonable care would obligate Nashoba to undertake the enormous, if not prohibitive, expense of providing protective fencing or other barriers along the entire perimeter of every one of its slopes and trails, a suggestion obviously inconsistent with the underlying Legislative intent of G.L.c. 143 to protect the economic survival of the ski industry.