NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1480

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 526680

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe (Doe), appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (SORB) as a level two sex offender.[1]  On appeal, Doe claims that the decision of the hearing examiner (examiner) was arbitrary and capricious, Doe's risk to reoffend is low and compels a level one classification, and the examiner erred in

---

[1] The Superior Court judge affirmed SORB's classification in a memorandum and order.  Because the memorandum and order resolved all outstanding issues in the case and both parties appear to have treated it as a final judgment, we also treat it as a final judgment.  See GTE Prods. Corp. v. Stewart, 421 Mass. 22, 24 n.3 (1995); Flood v. Midland Nat'l Life Ins. Co., 419 Mass. 176, 177 n.1 (1994).

requiring Internet dissemination of Doe's personal information. We affirm.[2]

Background.  We summarize the facts as found by the hearing examiner, "supplemented by undisputed facts from the record," and reserve certain facts for later discussion.  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 606 (2011) (Doe No. 10800).

Doe's governing offense stemmed from his rape of his forty-four year old wife (victim).  Specifically, on June 1, 2015, the victim reported to police that Doe, "her estranged husband," who was then forty years old, showed up at her apartment to discuss their pending divorce.  At some point Doe "became angry."  The victim noted that Doe had been drinking for "most of the day," and attempted to avoid further discussion with him by going to the bathroom, but Doe followed her there.  Doe told the victim multiple times that he "wanted to make love to her."  After the victim refused his overtures, he told her that "if she didn't make love with him then he was just going to take her."  The victim attempted to "get away from [Doe]," but he followed her into her bedroom.  Doe ignored her pleas to leave, "started to yell and grabbed her by her arms and threw her on the bed."  Doe

─────────────────
      [2] Per the joint request of the parties, this case was submitted on briefs and without oral argument.  See Mass. R. A. P. 22 (f), as appearing in 481 Mass. 1651 (2019).

2

began to remove his clothing, pushed her back onto the bed, straddled her, "ripped her shirt off and pulled down her pants and panties," and, despite the victim's attempt to fight him off, "grabbed her legs" and "stuck his fingers in her vagina." The victim "cried and yelled at him to stop." Doe initially complied, but then "stuck his fingers back into her vagina a second time."

The following morning, the victim went to the home of a friend and disclosed the events from the prior evening. Police officers noted that the victim had "some slight bruising to her upper right shoulder, and a vertical scratch mark to her stomach." In addition, the victim's fourteen year old daughter, who was at the apartment during the sexual assault, reported that she "heard her mother telling [Doe] to get away and to get off of her."

On November 9, 2018, a jury found Doe guilty of one count of rape and one count of assault and battery on a family or household member. He was sentenced to three to five years of imprisonment followed by three years of probation. He was still incarcerated at the time of the classification hearing in the present case.

On July 7, 2020, SORB notified Doe of his duty to register as a level three sex offender. Doe challenged the classification, and on January 10, 2022, a de novo hearing was

3

held pursuant to G. L. c. 6, § 178L. On February 10, 2022, the examiner issued a decision in which she found, by clear and convincing evidence, that Doe presented a moderate risk of reoffense and dangerousness such that a public safety interest was served by Internet publication of his registry information, and classified Doe as a level two sex offender. Doe sought judicial review of the decision pursuant to G. L. c. 30A, § 14. On November 10, 2023, following a hearing on Doe's motion for judgment on the pleadings, a Superior Court judge denied the motion and affirmed the level two classification. This appeal followed.

Discussion. 1. Standard of review. A reviewing court may set aside a decision of SORB if it determines "that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law" (citation omitted). Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 801 (2022). The reviewing court shall "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006) (Doe No. 10216), quoting G. L. c. 30A, § 14 (7). Doe therefore "bears a heavy burden of establishing that [SORB]'s decision was

4

incorrect" (citation omitted). Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 757 (2021).

2. Classification determination. a. Application of factor 16. The examiner found that the victim's fourteen year old daughter was in the home when Doe sexually assaulted the victim, and that the daughter "did, in fact, hear the [v]ictim pleading with [Doe] to get off of her." The examiner determined that in view of these facts, risk elevating factor 16 (public place) applied. Doe argues that the examiner erred in applying factor 16 because the rape occurred in the victim's private bedroom, Doe went to the victim's apartment late at night, and Doe did not assault the victim until hours later when "it was reasonable that most of the people residing in the apartment were asleep." We disagree.

Factor 16 provides as follows:

"The commission of a sex offense or engaging in sexual misconduct in a place where detection is likely reflects the offender's lack of impulse control. The Board may apply less weight to factor 16 if there is evidence that the offender made a clear and concerted effort to conceal his offending behavior from others. For purposes of factor 16, a 'public place' includes any area maintained for or used by the public and any place that is open to the scrutiny of others or where there is no expectation of privacy."

803 Code Mass. Regs. § 1.33(16)(a) (2016). Here, the victim's daughter was in the apartment when and where the rape and

5

assault occurred, and heard her mother telling the plaintiff to "get off of her" as the crime was taking place. Doe, who had been drinking most of the day, went to the apartment uninvited, became angry, followed the victim into her bedroom despite her repeated attempts to be left alone, straddled and assaulted her, and, in spite of the victim's yelling and pleading, committed a violent rape and physical assault in the victim's bedroom. Under these particular circumstances, where the daughter could hear, and indeed did hear, the crime in progress, it is clear that Doe did not make a "clear and concerted effort to conceal his offending behavior from others," and it was reasonable for the examiner to find that the offense was committed in a place "open to the scrutiny of others." 803 Code Mass. Regs. § 1.33(16)(a) (2016). See Doe 10216, 447 Mass. at 789 (rejecting argument that definition of "public place" be limited to offenses committed in "truly public places, like parks or schools"). Accordingly, on the record before us, we cannot conclude that the application of factor 16 rendered the level two classification arbitrary and capricious.

b. Failure to prove level two classification. Doe contends that SORB failed to meet its burden to prove by clear and convincing evidence that he poses a moderate risk of reoffending. The claim is unavailing.

When reviewing a decision by SORB, we "must determine whether the decision is supported by substantial evidence" (citation omitted), Doe No. 10800, 459 Mass. at 632, which is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting G. L. c. 30A, § 1 (6). Our review "does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion . . . but only whether a contrary conclusion is not merely a possible but a necessary inference" (quotation and citation omitted). Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 110 (2014) (Doe No. 68549). See Doe No. 10800, supra at 633 ("It is the province of the board, not this court, to weigh the credibility of the witnesses and to resolve any factual disputes"). Furthermore, the "hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor." Doe No. 68549, supra at 109-110.

In the present case, the record reveals a comprehensive and reasonable analysis and weighing of the various SORB factors. The examiner applied four risk elevating factors to her analysis, all of which were supported by the evidence.[3] Further,

---

[3] Factor 8, weapon, violence or infliction of bodily injury; factor 9, alcohol and substance abuse (here, applied with minimal weight); factor 16, public place; and factor 19, level of physical contact.

7

the examiner chose to apply some weight to various mitigating factors.[4]  See Doe No. 68549, 470 Mass. at 109-110.  The examiner's decision was supported by substantial evidence, and we discern no abuse of discretion.

c.  Internet dissemination and public safety.  Doe further maintains that requiring Internet dissemination of his personal information was not supported by clear and convincing evidence that it would serve a public safety interest.  The argument is unpersuasive.  The examiner explained how active dissemination of Doe's registry information served public safety.  Based on the violent nature of the offense and Doe's relationship with the victim, his wife at the time, the examiner considered that if Doe were to reoffend, there is a likelihood that such an offense would involve a woman who "may become known to [Doe]," and with whom "he may become involved in a relationship."  The examiner reasoned that in the interest of public safety, such women should have access to his registry information "to take steps to protect themselves."  The record supports this conclusion.  Cf. Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 655 (2019) (Internet

_____

[4] Factor 28, supervision by probation or parole; factor 30, advanced age (here, considered with moderate weight); factor 33, home situation and support systems; and factor 34, materials submitted by the sex offender regarding stability in the community (here, considered with minimal weight).

8

dissemination of level two offender's information "will almost invariably serve a public safety interest by notifying potential victims of the risks presented by the offender in their geographic area").

For the reasons detailed in the examiner's decision and the reasons stated herein, we cannot conclude that the examiner's decision was arbitrary, capricious, or an abuse of discretion.

<u>Judgment affirmed</u>.

By the Court (Massing, Neyman & Wood, JJ.[5]),

*Paul Little*

Clerk

Entered:  June 25, 2025.

---

[5] The panelists are listed in order of seniority.