[Civ. No. 69279. Second Dist., Div. Seven. Dec. 20, 1984.]

Estate of BEVERLY WATTS, Deceased.
TRACEY LEIGH WATTS, as Special Administrator, etc., et al.,
Plaintiffs and Respondents, v.
CHARLES DICKERSON, Defendant and Appellant.

**COUNSEL**

Hampton, Wilson & Earle and Albert Hampton for Defendant and Appellant.

Michael Levine for Plaintiff and Respondent.

OPINION

**THOMPSON, J.**—In a personal injury action, the defendant, Charles Dickerson, appeals from the judgment awarding the administrators of the estate of Beverly Watts $25,000 pursuant to a statutory offer of compromise made under Code of Civil Procedure section 998,[1] by Dickerson to Watts prior to her death.

The sole issue on this appeal is whether the statutory offer of compromise under section 998 created an irrevocable option for 30 days which was not terminated by the death of the offeree. We hold that, in the context of a personal injury action, a statutory offer of compromise by a defendant pursuant to section 998 is terminated by the death of the plaintiff offeree prior to its acceptance in accord with general contract law principles. Thus, the purported acceptance of Dickerson's statutory offer by the administrators of Watts' estate had no legal effect. Accordingly, we will reverse the judgment.

The relevant facts are undisputed. Watts sued Dickerson in an action for personal injuries arising out of a slip and fall accident on Dickerson's property. The complaint alleged, inter alia, pain and suffering and sought general as well as special damages. On October 20, 1982, Dickerson made an offer to Watts to compromise pursuant to section 998 by paying her $25,000. On November 3, 1982, Watts made a subsequent statutory offer of $54,499 to Dickerson to compromise pursuant to section 998.

On November 8, 1982, Watts died of apparently unrelated causes. On November 10, Tracey Watts and Deborah DeYoung were appointed special

---

[1] Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

Section 998 provides in pertinent part: "(b) Not less than 10 days prior to commencement of the trial as defined in subdivision 1 of Section 581, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. If such offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial.

"(c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court, in its discretion, may require the plaintiff to pay the defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the defendant.

"(d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs."

administrators of the estate of the decedent Watts. On November 12, a supplemental complaint was filed in the action wherein the special administrators were substituted as plaintiffs. On that same day, the special administrators filed a written notice of acceptance of Dickerson's original statutory offer to compromise for $25,000. The administrators successfully moved for a $25,000 judgment under section 998, on the ground that Dickerson's section 998 offer was irrevocable for 30 days and could be accepted by Watts' administrators within that time period despite her death. This appeal followed.[2]

## Discussion

Our Supreme Court's recent opinion in *T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273 [204 Cal.Rptr. 143, 682 P.2d 338], is dispositive of this appeal. Subsequent to the trial court's ruling herein and filing of this appeal, our Supreme Court held in *Cobb* that an offer to compromise made pursuant to section 998 is merely a revocable offer and does not create an irrevocable option. (*Id.*, at pp. 282-284.) ■ The court concluded that general contract law principles govern the process of offer and acceptance under section 998 unless such principles conflict with the statute or defeat the statutory purpose of encouraging pretrial settlement. (*Id.*, at p. 280; *Glende Motor Co.* v. *Superior Court* (1984) 159 Cal.App.3d 389, 395 [205 Cal.Rptr. 682].)

■ It is a well-established principle of contract law that death of an offeree terminates a revocable offer so that any subsequent acceptance by the offeree's administrator is ineffective. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 121, p. 122; 1 Corbin on Contracts (1963) § 54, pp. 230-231; 1 Williston on Contracts (3d ed. 1957) § 62, p. 207; Rest.2d Contracts (1981) §§ 36(d), 48, 52; 17 Am.Jur.2d, Contracts, § 38, p. 377; see also, e.g., *Hartford-Connecticut Trust Co.* v. *Divine* (1922) 97 Conn. 193 [116 A. 239, 240, 21 A.L.R. 134].)

This classic contract principle follows from the "elementary" rule of contracts that "an offer to contract is not assignable, it being purely personal to the offeree." (*Grieve* v. *Mullaly* (1930) 211 Cal. 77, 79 [293 P. 619]; *Ott* v. *Home Savings & Loan Association* (9th Cir. 1958) 265 F.2d 643, 646; see also Rest.2d Contracts, *supra*, § 52; 1 Williston on Contracts, *supra*, § 80, p. 263; 1 Corbin on Contracts, *supra*, § 56, p. 235.)

---

[2]Our discussion here is limited to the effect of Watts' death on the viability of Dickerson's offer. In view of our holding that the offer was terminated by the death of the offeree, we need not reach the issue of whether Watts' November 3 statutory offer constituted a counteroffer or rejection of Dickerson's October 20 statutory offer and thereby terminated Watts' power to accept Dickerson's offer.

As Witkin explains: "Only the person to whom the offer was made can accept it. Consequently, upon [her] death, neither [her] executor nor any other person may accept on [her] behalf." (1 Witkin, *supra,* § 121, at p. 122.) Thus, unless by the terms of the offer the personal representative had been made an additional offeree, the offeree's death renders impossible the acceptance of the offer and the formation of a contract. (See Rest.2d Contracts, *supra,* § 48; 1 Williston, *supra,* § 62, p. 207.)

■ Moreover, it makes no difference that the administrators herein purported to accept the section 998 offer prior to the expiration of the 30-day time period in the statute. ■ Where, as here, the offeree dies after receiving the offer, an executor cannot accept it even though he acts within the permitted time. (*Brunner-Booth Fotochrome Corp.* v. *Kaufman* (1963) 18 App.Div.2d 160 [238 N.Y.S.2d 26, 30]; Rest.2d Contracts, *supra,* § 52, com. a, illus. 1.)

■ We recognize that under general contract law principles, an irrevocable option for consideration can survive the death of the optionee and be exercised by an administrator. (See, e.g., *Mubi* v. *Broomfield* (1972) 108 Ariz. 39 [492 P.2d 700]; Rest.2d Contracts, *supra,* § 37; 17 Am.Jur.2d, *supra,* § 38, at p. 377; see also 1 Witkin, *supra,* § 730, p. 611.) But in *Cobb,* Chief Justice Bird, speaking for the majority of the court, expressly rejected the contention that an irrevocable option is created when an offer is made pursuant to section 998. (36 Cal.3d at p. 282.) ■ When Dickerson made the 998 offer herein on October 20, 1982, to allow judgment in Watts' favor for $25,000, "there was no indication that the offer was irrevocable." (*Ibid.*) Thus, here, as in *Cobb,* the prerequisite of mutual consent to the existence of an irrevocable option contract was absent; "the parties never agreed that the offer was irrevocable or that they were consenting to an irrevocable option contract." (*Ibid.*)

In this case it is logical to assume, as Dickerson contends, that his offer was made in contemplation of potential liability for general damages as reflected in the allegations of Watts' complaint. We agree with Dickerson that policy considerations favor application of the general rule.

In our view, the statutory purpose of encouraging pretrial settlements will best be served by permitting classic contract law to govern here so that death of a plaintiff offeree in a personal injury action serves to terminate the power to accept the offer. A living plaintiff, such as Watts, can seek general as well as special damages. But, upon her death, Probate Code section 573 expressly precludes recovery by her estate in the surviving action for "pain, suffering or disfigurement." We think defendants in personal injury actions are more likely to make section 998 offers if such offers are

deemed terminated by this change in circumstances materially reducing their potential exposure to damages in the surviving action. (See *Cobb, supra,* 36 Cal.3d at p. 281.)

Furthermore, "[u]niformity of rule simplifies the legal process, makes disputes less likely, and enables parties to settle their differences outside courts of law." (*Glende Motor Co.* v. *Superior Court, supra,* 159 Cal.App.3d at p. 396.) The application of this classic contract principle in a personal injury action does not conflict with this statute. The statute provides for "termination by operation of law" (*Cobb, supra,* 36 Cal.3d at p. 277) of an offer which is not accepted within 30 days; it does not preclude the termination of the offer by operation of law prior to that expiration time upon the death of the offeree. By concluding, in accord with fundamental contract law principles, that the death of the plaintiff offeree in a personal injury action terminates the section 998 offer, we avoid needlessly complicating the applicable law.[3]

Thus, the administrator's purported acceptance of the offer on November 12, although made within the 30-day period, was a nullity. Accordingly, the judgment is reversed.

Lillie, P. J., and Johnson, J., concurred.

---

[3]Regardless of whether the death of the plaintiff offeree is characterized as terminating the offer or terminating the power to accept the offer, it is apparent that the offer herein cannot be utilized for any purpose. Just as the offeree's administrator cannot accept it, neither can the offeror rely upon it to recover cost sanctions, under subdivision (c) of section 998. (Cf. *Glende Motor Co.* v. *Superior Court, supra,* 159 Cal.App.3d at pp. 397-398.)