Filed 12/30/24  Calleja v. Udewitz CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAISY CALLEJA,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JONATHAN UDEWITZ, as Special Administrator, etc.,*<br><br>      Defendant and Appellant. | B319906<br><br>(Los Angeles County Super. Ct. No. BC574549) |

APPEAL from an order of the Superior Court of Los Angeles County, Frederick C. Shaller, Judge.  Affirmed.

Ford, Walker, Haggerty & Behar, Neil Tardiff and Mark P. LaScola for Defendant and Appellant.

Singleton Schreiber, Benjamin I. Siminou; Simon Law Group and Greyson M. Goody for Plaintiff and Respondent.

_____

*  See footnote 4, *post*.

This is an appeal from an award in a personal injury case of expert fees and prejudgment interest pursuant to the penalty provisions in Code of Civil Procedure[1] section 998 and Civil Code section 3291.  To encourage pretrial settlement of litigation, the Legislature enacted section 998, which authorizes a plaintiff to seek an award of expert witness fees accruing after the date of the plaintiff's settlement offer if the defendant does not accept that offer and the defendant fails to secure a more favorable judgment or award.  (See § 998, subds. (b) & (d).)  If the offer is made in a personal injury action and the plaintiff obtains a more favorable judgment, then the plaintiff may also seek an award of postoffer prejudgment interest.[2]  (See Civ. Code, § 3291.)

This appeal presents the following question:  If (1) a defendant does not accept a plaintiff's section 998 offer, (2) the defendant dies after the offer expired, and (3) the plaintiff ultimately secures a judgment or award greater than the settlement offer, then can the plaintiff obtain an award of statutory penalties against the deceased defendant's personal representative?[3]  We answer that question in the affirmative.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] As a shorthand, we sometimes refer collectively to the postoffer expert witness fees and prejudgment interest awardable under Code of Civil Procedure section 998 and Civil Code section 3291 as "section 998 penalties" or "statutory penalties."

[3] " ' "The 'personal representative' is the person or firm appointed by the probate court to administer the probate of a decedent's estate. [Citation.]  The personal representative may be the executor, who is the person named as such in the decedent's will, or it may be the successor to the executor, or an

Section 998 does not expressly address whether the personal representative of the deceased recipient of the section 998 offer may be held liable for statutory penalties by virtue of the deceased's failure to accept the opposing party's section 998 offer.  Nor does Civil Code section 3291.  Defendant and appellant Donna Bogdanovich[4] contends section 998 refers to "the defendant" and we should interpret that term to refer to the now deceased former defendant, because he, and not the personal representative, received the offer.  Plaintiff and respondent Daisy

administrator appointed by the court where the decedent died without a will naming an executor.  [Citation.]" ' [Citation.]  'It is the duty of the personal representative to collect estate assets and preserve them until distribution, to pay claims against the estate including taxes and the charges of administration, and to distribute the residue to those entitled.'  [Citations.]"  (*Estate of Casserley* (2018) 22 Cal.App.5th 824, 828, fn. 1, italics omitted.)

[4]  We note appellant's briefing contains two different spellings of Bogdanovich's name.  This discrepancy has no impact on our resolution of this appeal.

We further note that on May 21, 2024, appellant's counsel informed this court that Bogdanovich had been removed from her position as administrator of the Estate of Jose Chavez in January 2024.  On November 6, 2024, the probate court in case no. 19STPB05495 appointed Jonathan Udewitz as "the Special Administrator . . . for the sole purpose of representing the Estate" in this appeal.  We, sua sponte, take judicial notice of this probate court order, which was attached to a status report filed by appellant's counsel on November 12, 2024.  (Evid. Code, §§ 452, subd. (d), 459.)  Because Bogdanovich was the administrator of Chavez's estate during the events that are the subject of this appeal, we refer to the administrator/appellant as "Bogdanovich" throughout this opinion except where necessary for clarity.

3

Calleja argues the personal representative stands in the deceased's shoes such that statutory penalties may be imposed on the personal representative even if he or she was not the recipient of the section 998 offer. We conclude that because the statutory language is reasonably susceptible to either interpretation, Code of Civil Procedure section 998 and the corresponding language in Civil Code section 3291 are ambiguous. In the absence here of relevant legislative history, we conclude that the purposes underlying both statutes are better served by adopting Calleja's interpretation.[5]

Our interpretation of Code of Civil Procedure section 998 and Civil Code section 3291 disposes of Bogdanovich's principal challenge to the trial court's award of expert witness fees and prejudgment interest to Calleja. We also reject Bogdanovich's contention that Calleja waived her right to seek section 998 penalties, and conclude that Bogdanovich forfeited the remaining claims of error, including that the trial court erred in awarding prejudgment interest on future damages. In sum, we affirm.

---

[5] Probate Code section 1002 provides: "Unless it is otherwise provided by this code or by rules adopted by the Judicial Council, either the superior court or the court on appeal may, in its discretion, order costs to be paid by any party to the proceedings, or out of the assets of the estate, as justice may require." (Prob. Code, § 1002.) In their briefing, neither party cites section 1002, and, consequently, they do not address whether it has any relevance to the issues before us. We thus express no opinion on that question.

4

## PROCEDURAL BACKGROUND[6]

We summarize only the procedural history relevant to this appeal.

In March 2015, Calleja sued Jose Chavez for personal injuries she allegedly suffered in a motor vehicle accident. On February 25, 2016, Calleja served Chavez with a section 998 offer to compromise in the amount of $750,000. Chavez allowed the offer to lapse by failing to accept it within the 30-day statutory deadline for doing so. (See Applicable Law, *post* [discussing § 998, subd. (b)(2)'s deadline to accept an offer].) Chavez died in November 2018.

In December 2019, Calleja filed a Doe amendment naming Bogdanovich, administrator of Chavez's estate, in place of Doe 3. Bogdanovich answered the complaint in January 2020. Calleja did not serve an offer of compromise on Bogdanovich, and neither party claims Bogdanovich had served an offer of compromise on Calleja either. In July 2021, the trial court clerk dismissed Chavez from the action without prejudice at Calleja's request.[7]

In August 2021, a jury tried the case. The jury returned a verdict in favor of Calleja and against Bogdanovich in the amount

---

[6] We derive our Procedural Background in part from undisputed findings in the trial court's ruling, the parties' admissions in their appellate briefing, and assertions by Calleja that Bogdanovich does not dispute in the reply brief. (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 772, fn. 2, 773–774 (*Association for Los Angeles Deputy Sheriffs*) [employing this approach].)

[7] We describe this dismissal in greater detail in our Discussion, part D, *post*.

of $1,176,992.60, which consists of $221,392.60 in past economic loss, $150,000 in past noneconomic damages, $705,600 in future economic loss, and $100,000 in future noneconomic damages.[8] In September 2021, in accordance with the jury's verdict, the trial court entered judgment in favor of Calleja and against Bogdanovich in her capacity as administrator of Chavez's estate. The original judgment contained a blank space for the trial court to later insert an award of costs in favor of Calleja and against Bogdanovich in her capacity as the administrator of Chavez's estate.

Calleja filed a memorandum of costs seeking $834,163.24 against Bogdanovich, including $89,969.49 in expert witness fees and $657,173.48 in prejudgment interest. Bogdanovich moved to tax costs, arguing, among other things, that Calleja was not entitled to section 998 penalties because she never served a statutory offer on Bogdanovich. On December 16, 2021, the trial court rejected Bogdanovich's argument against awarding section 998 penalties and awarded Calleja $81,789.75[9] in expert witness fees and $683,945.56 in prejudgment interest.[10] Concurrent with its order on Bogdanovich's motion to tax, the

---

[8] At one point, the judgment's recitation of the jury's verdict suggests that the $100,000 award corresponds to Calleja's *past*—rather than *future*—noneconomic damages. This apparent typographical error does not impact our resolution of this appeal.

[9] The trial court granted in part Bogdanovich's motion by taxing $8,179.74 of the expert witness fees, $1,209 in deposition costs, and $2,400 in interpreter fees that Calleja had requested.

[10] Calleja had requested $657,173.48. The trial court awarded a higher amount—$683,945.56—to account for interest accruing after Calleja filed her memorandum of costs.

6

trial court issued an amended judgment that included its award of costs to Calleja.

On February 25, 2022, Bogdanovich appealed the December 16, 2021 order.  During the pendency of this appeal, in an unpublished opinion, we affirmed the original judgment that awarded Calleja the damages found by the jury.  (*Calleja v. Bogdanovich* (Aug. 17, 2023, B317024) [nonpub. opn.].)[11]

## APPLICABLE LAW

"As a general matter, a party prevailing at trial may not recover the fees of experts who are not ordered by the court.  [Citations.]  Such fees are recoverable, however, when a judgment following the nonacceptance of a pretrial settlement offer triggers operation of section 998." (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018–1019 (*Martinez*).)

Section 998 delineates procedures governing the service and expiration of settlement offers subject to its terms.  "Not less than 10 days prior to commencement of trial or arbitration (as provided in Section 1281 or 1295) of a dispute to be resolved by arbitration, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time." (§ 998, subd. (b).)  "If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly." (*Id.*, subd. (b)(1).)  "Any judgment or award entered pursuant to . . . section [998] shall be deemed to be a compromise settlement." (*Id.*, subd. (f).)  "If the offer is not accepted prior to trial or arbitration or within

---

[11] We, sua sponte, take judicial notice of our prior unpublished opinion.  (Evid. Code, §§ 452, subd. (d), 459.)

30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration." (*Id.*, subd. (b)(2).)

The statute also prescribes the consequences of failing to accept such a settlement offer. Regarding a defendant's settlement offer: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant." (§ 998, subd. (c)(1).)

Regarding settlements offered by a plaintiff, the statute provides: "If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs." (§ 998, subd. (d).)

A correlating provision appears in Civil Code section 3291, which "provides for prejudgment interest as a recoverable cost

when a plaintiff prevails on a . . . section 998 offer in personal-injury actions." (See *Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1293, 1301 & fn. 1 (*Glassman*).) Specifically, "[i]f the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment." (Civ. Code, § 3291.)

The "fee-shifting rules of section 998" turn on whether "the section 998 offer was valid, reasonable, and made in good faith." (See *Smalley v. Subaru of America, Inc.* (2022) 87 Cal.App.5th 450, 453.) In analyzing whether the offeror discharged his or her burden of establishing the validity of a section 998 offer, a court determines whether the offer complies with the statute and is sufficiently specific to permit the offeree to determine whether to accept it. (See *Glassman, supra*, 90 Cal.App.5th at p. 1313.) If the offeror discharges that burden, then the offeree must "demonstrate the offer was unreasonable or was not made in good faith" to avoid statutory penalties. (See *Smalley*, at pp. 455, 458.)

## DISCUSSION

### A. Bogdanovich's Appeal of the Trial Court's Order Is Timely

Calleja does not contest the timeliness of Bogdanovich's appeal. We, however, " 'are dutybound to consider [this question] on our own motion' [citation]" because " '[c]ompliance with the

9

time for filing a notice of appeal is mandatory and jurisdictional. [Citations.] . . . .' [Citations.]" (See *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 436; *Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842 (*Ellis*).)

"California Rules of Court, rule 8.104(a)(1),[12] contains the applicable time period for filing a notice of appeal." (*Ellis, supra,* 235 Cal.App.4th at p. 842.) Rule 8.104(a)(1) provides in pertinent part: "[A] notice of appeal must be filed on or before the earliest of: [¶] (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment." (Rule 8.104(a)(1).) "As used in [rule 8.104](a)[,] . . . 'judgment' includes an appealable order if the appeal is from an appealable order." (Rule 8.104(e).)

On December 16, 2021, the trial court issued its minute order granting in part and denying in part Bogdanovich's motion to tax costs.[13] On February 25, 2022, Bogdanovich appealed the

---

**12** All unspecified rule references are to the California Rules of Court.

**13** A postjudgment ruling on a motion to tax costs is appealable pursuant to section 904.1, subdivision (a)(2). (See § 904.1, subd. (a)(2) ["An appeal . . . may be taken from any of the following: [¶] . . . [¶] [A]n order made after a judgment . . . ."]; *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1081 [noting that " '[a]

10

December 16, 2021 order. Bogdanovich asserts in her opening brief that she filed the notice of appeal on February 14, 2022. Although Bogdanovich's trial counsel apparently inserted "2/14/2022" above the signature line on the notice of appeal, the trial court clerk's electronic stamp at the top of the document shows the notice was filed on February 25, 2022. Accordingly, Bogdanovich filed her notice of appeal 71 days after issuance of the December 16, 2021 order.[14] Bogdanovich's appeal is nonetheless timely.

First, rule 8.104(a)(1)(A)'s 60-day deadline is inapplicable. We acknowledge that a certificate of mailing filed on December 16, 2021 indicates the trial court clerk served the order on Bogdanovich's counsel on that date. There is no indication, however, that the trial court clerk served a "Notice of Entry" of that order or a filed-endorsed copy of the ruling upon Bogdanovich.[15] (See *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 902 [" 'Because the time limits for filing a notice of appeal are jurisdictional, we must apply

---

postjudgment order which awards or denies costs[,]' " including an "order denying [a] motion to tax costs," " 'is separately appealable' " pursuant to § 904.1, subd. (a)(2)].)

[14] We, sua sponte, take judicial notice of the fact that February 25, 2022 is 71 days after December 16, 2021. (Evid. Code, §§ 452, subd. (h), 459.)

[15] We, sua sponte, take judicial notice of the certificate of mailing and the December 16, 2021 order from the trial court's docket, neither of which indicate the court clerk served a "Notice of Entry" of the order or a filed-endorsed version of the order on the parties. (Evid. Code, §§ 452, subd. (d), 459.)

11

[rule 8.104(a)(1)] . . . strictly and literally according to its terms . . . ."].)

Next, our record is devoid of evidence or a representation in briefing that either party had served the other with a copy of the December 16, 2021 order. Thus, rule 8.104(a)(1)(B)'s 60-day deadline is also inapplicable.

In sum, because Bogdanovich filed her notice of appeal within 180 days of entry of the December 16, 2021 order, her appeal is timely under rule 8.104(a)(1)(C).

**B.** **Interpreting Code of Civil Procedure Section 998 and Civil Code Section 3291 To Authorize Statutory Penalties Against a Personal Representative of a Defendant Who Failed To Accept a Plaintiff's Settlement Offer Best Effectuates the Statutes' Purposes, Including Promotion of Early Settlement**

*1.* *Principles of statutory interpretation and standard of review*

The principles of statutory interpretation are well known. We start with the language of the statute. (*Dignity Health v. Local Initiative Health Care Authority of Los Angeles County* (2020) 44 Cal.App.5th 144, 154 (*Dignity Health*).) If the language is ambiguous, that is, it "allows for more than one reasonable interpretation," then we consult legislative history and other extrinsic evidence of legislative intent. (See *ibid.*) In addition, we may consider public policies served by the parties' opposing statutory interpretations. (See *People v. Manzo* (2012) 53 Cal.4th 880, 885–886 (*Manzo*).)

In applying these interpretive rules, we are mindful that " '[t]he fundamental rule is to ascertain the Legislature's intent

12

in order to give effect to the purpose of the law.' [Citation.]" (*Dignity Health*, *supra*, 44 Cal.App.5th at p. 154.) " ' "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*People v. Lofchie* (2014) 229 Cal.App.4th 240, 251 (*Lofchie*).)

To recap, the principal issue before us is whether a plaintiff may recover section 998 penalties from the personal representative of a now deceased defendant when the section 998 offer was made only to the deceased, and not the personal representative, and the offer had expired before that defendant died. "Because this is a question of statutory interpretation, our review is de novo." (*Moofly Productions, LLC v. Favila* (2018) 24 Cal.App.5th 993, 997.)

" 'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] . . ." ' [Citation.]" (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555.) This rule is a corollary to " ' "[t]he most fundamental rule of appellate review . . . that an appealed judgment or order is presumed to be correct." [Citation.] It is the appellant who bears the burden of overcoming that presumption.' [Citation.]" (See *id.* at p. 555.) To overcome the presumption of correctness, the appellant must " ' " 'supply[ ] the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " [Citation.]' [Citation.]" (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at pp. 776–777.)

2. *Code of Civil Procedure section 998 and Civil Code section 3291 are ambiguous, and there is no legislative history or judicial decision resolving the issue before us*

Section 998 does not expressly address whether a trial court may award statutory penalties against the personal representative of a deceased defendant who failed to accept a plaintiff's section 998 offer:  "If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award[,] . . . the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses . . . ."  (See § 998, subd. (d).)  Civil Code section 3291 does not expressly address that circumstance either; it merely prescribes the consequences when "the defendant" does not accept the plaintiff's Code of Civil Procedure section 998 offer.[16]  (See Civil Code, § 3291.)

Bogdanovich argues that Code of Civil Procedure section 998, subdivision (d)'s reference to "the defendant," and, presumably, Civil Code section 3291's use of that term, should be read narrowly, that is, statutory penalties can be awarded

_____

[16]  Civil Code section 3291, however, exempts public entities and employees acting within the scope of their employment from its penalty provisions.  (See Civ. Code, § 3291 ["This section shall not apply to a public entity, or to a public employee for an act or omission within the scope of employment, and neither the public entity nor the public employee shall be liable, directly or indirectly, to any person for any interest imposed by this section."].)

14

against only the actual recipient of the plaintiff's offer.[17] Calleja counters that a personal representative stands in the shoes of the deceased former defendant, who received and failed to accept the plaintiff's section 998 offer.

The statutory text is reasonably susceptible to Calleja's and Bogdanovich's interpretations. The statute is thus ambiguous. (See *Dignity Health*, *supra*, 44 Cal.App.5th at p. 154 [" 'If the statutory language is clear, we should not change it to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citation.] If, however, the language allows for more than one reasonable interpretation[, it] . . . is ambiguous . . . ."].)

The term "the defendant" in Code of Civil Procedure section 998, subdivision (d) and Civil Code section 3291, could simply refer to the "other party to the action" upon whom "any party" served the offer, as the quoted terms are referenced in subdivision (b) of section 998. (See § 998, subd. (b).)[18] On the other hand, the Code of Civil Procedure generally defines "the defendant" to a civil action as the party "adverse" to the plaintiff (see §§ 307–308), and a provision in that code states, "[A] cause of action against a decedent that survives may be asserted against

---

[17] Although Bogdanovich does not discuss specifically the text of Civil Code section 3291 in connection with this argument, Bogdanovich does argue the trial court's award of "expert witness fees *and post-settlement offer prejudgment interest*" was erroneous because statutory penalties cannot be awarded "against the administrator of a defendant's estate who was never served with the [Code of Civil Procedure section] 998 offer . . . ." (Italics added.)

[18] (See Applicable Law, *ante*.)

the decedent's personal representative" (see § 377.40).[19]  If Code of Civil Procedure section 998, subdivision (d) and Civil Code section 3291 were read in conjunction with these other provisions, one could infer that the term "the defendant" includes the personal representative of the deceased-offeree defendant. (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at p. 789, fn. 21 [noting that under "the interpretive doctrine of '*in pari materia*[,]' " " 'related statutes [can be] construed together' "].)

Neither Bogdanovich nor Calleja asserts there is evidence of legislative intent resolving this ambiguity, and our own research has not located any legislative history or judicial decisions resolving the interpretive issue before us.  We thus turn to the purposes underlying Code of Civil Procedure section 998 and Civil Code section 3291 for guidance in selecting the appropriate construction of "the defendant."  (See *Manzo*, *supra*, 53 Cal.4th at p. 886 [noting that "[w]e may . . . consider extrinsic aids such as the ostensible objects to be achieved, the evils to be remedied, and public policy" if a statute is ambiguous]; cf. *Martinez*, *supra*, 56 Cal.4th at p. 1017 [observing that "the terms of section 998 . . . are silent as to the effect of a party's multiple

_____

**19**  We acknowledge section 377.40 provides that the right to assert a cause of action against a decedent's personal representative is "[s]ubject to Part 4 (commencing with Section 9000) of Division 7 of the Probate Code governing creditor claims . . . ."  (See § 377.40.)  We explain in Discussion, part C, *post*, that Bogdanovich forfeited her argument that the trial court's award of statutory penalties violates a provision in part 4 of division 7 of the Probate Code, to wit, Probate Code section 9370.  (See Prob. Code, § 9370 [codified in part 4 of div. 7 of the Prob. Code].)

16

[settlement] offers," and thereafter adopting a construction that is "consistent with section 998's language and best promotes the statutory purpose"].)

### 3. *The statutory purposes, as evidenced by our high court's description of those purposes, are best served by adopting Calleja's interpretation*

In *Martinez*, our high court described the statutory purposes underlying section 998. There, a plaintiff served two pretrial statutory offers on the defendant, neither of which was accepted. (See *Martinez*, *supra*, 56 Cal.4th at pp. 1017–1018.) After trial, the plaintiff obtained a judgment that was in the same amount as her first statutory offer and greater than her second offer. (See *id.* at p. 1018.) The Supreme Court rejected the defendant's argument that the plaintiff was not entitled to the expert fees she incurred after her first settlement offer but before her second offer. (See *id.* at pp. 1017–1018, 1027.) *Martinez* held, "Where . . . a plaintiff serves two statutory offers to compromise, and the defendant fails to obtain a judgment more favorable than either offer, recoverability of expert fees incurred from the date of the first offer is consistent with section 998's language and best promotes the statutory purpose to encourage the settlement of lawsuits before trial." (*Martinez*, at p. 1027.)

In arriving at this conclusion, *Martinez* observed that section 998 "was enacted to encourage the settlement of lawsuits prior to trial," and that "[t]he statute accomplishes this purpose by providing" " 'a strong financial disincentive to a party— whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer.' [Citation.]" (See *Martinez*, *supra*, 56 Cal.4th at pp. 1017, 1019.) The *Martinez* court further

17

explained that "the potential for statutory recovery of expert witness fees and other costs provides parties 'a financial incentive to make reasonable settlement offers[,]' [citation]" and that "[s]ection 998 aims to avoid the time delays and economic waste associated with trials and to reduce the number of meritless lawsuits." (*Martinez*, at p. 1019.) Our high court also observed the statute "serves the public policy of compensating the injured party." (See *id.* at p. 1021.) *Martinez* noted this policy is "accomplished by allowing a plaintiff who made an early settlement offer to 'either propose a new offer in light of . . . newly discovered evidence or proceed to trial and present all the evidence in an attempt to be compensated fairly by the trier of fact's decision' [citation] *without having to forfeit the statutory benefits flowing from the early offer*." (See *id.* at p. 1026, italics added.)

Although *Martinez* construed only Code of Civil Procedure section 998 (see *Martinez*, *supra*, 56 Cal.4th at p. 1017), we conclude that this statute and Civil Code section 3291 were both designed to effectuate the same purposes. Civil Code section 3291 "expressly incorporates the provisions of Code of Civil Procedure section 998, adding interest from the date of the offer as a recoverable item . . . ." (See *Glassman*, *supra*, 90 Cal.App.5th at p. 1293.) Thus, the interpretive doctrine of *in pari materia* counsels in favor of reading the statutes together. (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at p. 789, fn. 21.) The parties do not contend otherwise.

Additionally, the *Martinez* court recognized that Civil Code section 3291's legislative history "plainly reflects a legislative policy choice to encourage *early* settlement of personal injury

18

actions," which is Code of Civil Procedure section 998's objective as well. (See *Martinez*, *supra*, 56 Cal.4th at p. 1024, fn. 8; see also *Ray v. Goodman* (2006) 142 Cal.App.4th 83, 91 (*Ray*) [observing that both statutes are designed to "encourage the parties to make reasonable settlement offers as early as possible in personal injury litigation"].) It is also apparent that much like Code of Civil Procedure section 998, Civil Code section 3291 serves the public policy of compensating the injured party. Specifically, we agree with Bogdanovich that Civil Code section 3291 is aimed at "compensating [a p]laintiff for loss of use of money during the prejudgment period." (See also *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 664 ["In enacting [Civil Code] section 3291, the Legislature provided a means of compensating personal injury plaintiffs for loss of use of money during the prejudgment period."].)

Construing "the defendant" in Code of Civil Procedure section 998, subdivision (d) and Civil Code section 3291 to include a decedent-offeree's personal representative would best effectuate the statutory purposes our high court identified in *Martinez*. Under Calleja's interpretation of the two statutes, the specter of section 998 penalties imposed on account of the deceased's failure to accept the original offer within the statutory deadline would incentivize the personal representative to engage in further settlement discussions with the plaintiff. (See Code Civ. Proc., § 998, subd. (b)(2) [prescribing the deadline for acceptance of a § 998 offer]; *Martinez*, *supra*, 56 Cal.4th at p. 1017 [noting that § 998's penalties apply "when the judgment is not more favorable than the plaintiff's settlement offer" to the defendant]; Civ. Code, § 3291 [authorizing prejudgment interest if the plaintiff obtains a judgment more favorable than the settlement offer].)

19

Including the decedent's personal representative in the scope of the term "the defendant" would also effectuate the statutory objective of compensating injured parties. Under Calleja's interpretation, a plaintiff could make a reasonable settlement offer to the decedent during his or her lifetime and, if the jury returns a verdict after the decedent's passing that is more favorable to the plaintiff than the offer, then the plaintiff would be compensated for the "time delays and economic waste associated with [a] trial" that could have been avoided if the decedent had accepted the offer. (See *Martinez, supra*, 56 Cal.4th at p. 1019 [noting that § 998 is designed to avoid such delays and waste].)

Conversely, if the personal representative were not bound by the decedent-offeree's failure to accept a section 998 offer, then there would be no risk to the personal representative of incurring statutory penalties resulting from that failure. Also, if the plaintiff were to make a second section 998 offer, then the personal representative could accept the second offer with no liability to the plaintiff for any expert witness fees or prejudgment interest incurred after the first offer. The plaintiff's financial interests would thus be jeopardized by a possibility completely beyond that party's control, to wit, the original defendant's death before trial. Because we must avoid an " 'interpretation [of the statute] that would lead to [such an] absurd consequence' " (see *Lofchie, supra*, 229 Cal.App.4th at p. 251), we reject Bogdanovich's interpretation. Indeed, if, as the *Martinez* court held, "parties should not be penalized for making more than one reasonable settlement offer" under section 998 (see *Martinez, supra*, 56 Cal.4th at p. 1026), we see no reason

20

why a plaintiff who made a reasonable unaccepted settlement offer should be penalized for the death of the original defendant.

Bogdanovich argues that holding her liable for Chavez's failure to accept Calleja's section 998 offer would be unfair because Bogdanovich "did not have any involvement in and therefore no control over the litigation process . . . until after . . . Chavez died," and "[t]he dynamics of trial drastically change when one of the parties to the lawsuit dies and cannot appear or testify at trial." Bogdanovich further claims *Estate of Watts* (1984) 162 Cal.App.3d 1160 (*Watts*) supports her position that "she should not be penalized for the decedent defendant allowing the offer to be withdrawn" "by operation of law pursuant to section 998[, subdivision ](b)(2)." Additionally, Bogdanovich's counsel suggested at oral argument that the Court of Appeal's decision in *Ray* demonstrates that Calleja could not recover section 998 penalties because she did not serve a statutory offer to compromise on Bogdanovich. These arguments do not undermine our interpretation of "the defendant" in Code of Civil Procedure section 998, subdivision (d) and Civil Code section 3291.

First, Bogdanovich seems to argue that because she was unable to control the litigation until after Chavez's death, "the statutory purpose of encouraging settlements is *not* promoted by awarding section 998 [penalties] against" her. We disagree.

Section 377.41 provides in pertinent part: "On motion, the court shall allow a pending action or proceeding against the decedent that does not abate to be continued against the decedent's personal representative . . . ." (§ 377.41.) Bogdanovich concedes this statute codifies prior case law holding that a "personal representative was bound by the trial court's findings"

21

rendered at trial against the decedent-defendant before he or she had passed.  Our interpretation of Code of Civil Procedure section 998 and Civil Code section 3291 is consistent with the legislative determination that in at least some cases, the personal representative should bear the consequences of prior decisions the decedent had made during the litigation.

We find unpersuasive Bogdanovich's argument that Calleja's interpretation of Code of Civil Procedure section 998 and Civil Code section 3291 is unfair because Chavez's death hindered Bogdanovich's defense at trial.  Any number of events can occur after expiration of a section 998 offer that may impede a party's defense.  For instance, a key witness may die or otherwise become unavailable on the eve of trial.  Notwithstanding the possibility of such contingencies, a court assesses the reasonableness of a section 998 offer by reviewing " 'the information available to the parties *as of the date the offer was served*' " and not at some later point in time.  (See *Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1112, italics added.)  Given that Code of Civil Procedure section 998 and Civil Code section 3291 require offeree-defendants to bear such postoffer risks, we see no reason why these statutes would treat the subsequent death of the offeree-defendant any differently.  Also, allowing a personal representative to invoke prejudice as a basis for avoiding liability for statutory penalties would improperly "inject[ ] uncertainty into the section 998 process."  (See *Martinez, supra,* 56 Cal.4th at p. 1021; *ibid.* [holding that a court should reject a proposed interpretation of section 998 if it "would encourage gamesmanship or spawn disputes over the operation of section 998," and observing that "courts have

22

adopted bright-line rules [in this context] in order to avoid confusion"].)

Furthermore, our interpretation would not unfairly prejudice Bogdanovich's personal interests. Under Code of Civil Procedure section 998 and Civil Code section 3291, postoffer expert witness fees and prejudgment interest constitute "recoverable costs . . . ." (See *Glassman*, *supra*, 90 Cal.App.5th at pp. 1293–1294, 1313–1314.) Although Code of Civil Procedure section 1026 provides that costs are recoverable "in an action . . . defended by a personal representative," those costs are "chargeable only upon the estate . . . represented, unless the court directs the costs to be paid by the fiduciary personally for mismanagement or bad faith in the action or defense."[20] (See § 1026, subds. (a)–(b).)

Next, *Watts* did not consider the scope of the term "the defendant" in Code of Civil Procedure section 998, subdivision (d) or Civil Code section 3291, but instead employed "general contract law principles" to determine whether a defendant's settlement offer had been " 'accepted' " for the purpose of section 998. (See *Watts*, *supra*, 162 Cal.App.3d at p. 1162 &

_____

**20** We acknowledge that the financial interests of a personal representative could be affected by our interpretation of Code of Civil Procedure section 998 and Civil Code section 3291 if that individual were also a beneficiary of the decedent's estate. An award of statutory penalties against the estate could arguably reduce the amount of funds available for distribution to the personal representative. That concern is not implicated here. Neither Bogdanovich nor Udewitz has claimed to be a beneficiary of Chavez's estate. Additionally, the trial court observed, and Bogdanovich does not dispute, "[t]here is no evidence that . . . Chavez had or that his estate has any assets."

23

fn. 1.) There, the plaintiff sued the defendant for "personal injuries arising out of a slip and fall accident on [the defendant's] property." (*Id.* at p. 1162.) Two events occurred within 30 days of the defendant's having served upon the plaintiff the section 998 offer to compromise the action for $25,000—(1) the plaintiff "died of apparently unrelated causes," and (2) the administrators of the plaintiff's estate "purported" to accept the defendant's offer. (See *Watts*, at pp. 1162–1163, 1165.) The administrators thereafter successfully moved for judgment in the amount of $25,000 pursuant to the section 998 offer. (*Watts*, at p. 1163.)

On appeal, the *Watts* court held, "[I]n the context of a personal injury action, a statutory offer of compromise by a defendant pursuant to section 998 is terminated by the death of the plaintiff offeree prior to its acceptance . . . ." (See *Watts*, *supra*, 162 Cal.App.3d at p. 1162.) *Watts* explained that "general contract law principles govern the process of offer and acceptance under section 998 unless such principles conflict with the statute or defeat the statutory purpose of encouraging pretrial settlement." (See *Watts*, at p. 1163.) Applying the "well-established principle of contract law that death of an offeree terminates a revocable offer," the Court of Appeal found that "the purported acceptance of [the defendant's] statutory offer by the administrators of [the plaintiff's] estate [within the 30-day statutory period for the plaintiff to consider the offer] had no legal effect." (See *id.* at pp. 1162–1163 & fn. 1.)

We agree with Bogdanovich's statement in her opening brief that "after [a section 998 offer] is withdrawn by operation of law" and the plaintiff secures a "verdict [that] exceeds [the p]laintiff's offer[,] . . . 'statutory penalties' come into play, not contract law." (See § 998, subd. (d) [authorizing "postoffer costs

24

of the services of expert witnesses" "[i]f an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment"]; Civ. Code, § 3291 [authorizing prejudgment interest if "the plaintiff obtains a more favorable judgment"].) Accordingly, *Watts*'s discussion of common law contract principles on acceptance of a pending offer is not instructive on the meaning of the statutory text at issue here.

Lastly, *Ray* is of no assistance to Bogdanovich. There, a plaintiff sued two defendants for injuries the plaintiff sustained when he fell on a stairway attached to property owned by the defendants. (*Ray, supra,* 142 Cal.App.4th at pp. 85–86.) Before trial, the plaintiff served the two defendants with a statutory offer to settle the case for $400,000 from each defendant; the defendants allowed this offer to lapse. (*Id.* at p. 86.) After one of the two defendants died, the plaintiff substituted the estate of that defendant for the deceased individual, and thereafter served upon the newly-added estate and the other defendant a statutory offer to settle for a total amount of $400,000.[21] (*Ray*, at p. 86.) Neither defendant accepted this second offer, and the plaintiff later secured a verdict awarding him $919,102. (*Ibid.*) The trial court subsequently awarded the plaintiff prejudgment interest pursuant to Civil Code section 3291 accruing from the date of the plaintiff's second offer, rather than from his first offer. (See *id.* at p. 85.)

_____

[21] Although Bogdanovich asserts in her reply brief that the deceased defendant's "personal representative was substituted in the case for the decedent," the *Ray* court stated that the plaintiff "substitut[ed] the [e]state of [the deceased] as a defendant in lieu of" that individual." (See *Ray, supra,* 142 Cal.App.4th at p. 86.) This discrepancy has no impact on our analysis.

25

The Court of Appeal reversed the trial court's decision and held that the plaintiff was entitled to prejudgment interest accruing from the date of the plaintiff's first offer.  (See *Ray*, *supra*, 142 Cal.App.4th at pp. 85, 92.)  The *Ray* court reasoned, "The question of the date from which . . . interest should be computed when a personal injury plaintiff makes multiple section 998 offers is answered by reference to the clear language of [Civil Code] section 3291:  from 'plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure.'  [Citation.]"  (*Ray*, at p. 91.)  The Court of Appeal further explained that the statutory policy of "encouragement of the settlement of litigation" supported this interpretation of Civil Code section 3291 because, "[i]f prejudgment interest on behalf of a successful personal injury plaintiff were to run only from that party's *last* section 998 offer, it would necessarily discourage that party from making successive, and lower, section 998 offers, thus significantly reducing the chances of pretrial settlement."  (See *Ray*, at pp. 91–92.)

As Bogdanovich acknowledges in the reply brief, "[N]o argument in *Ray* was ever made that the offers [the plaintiff had made] were to two different parties."  (See *Ray*, *supra*, 142 Cal.App.4th at pp. 87–92 [instead addressing other issues].)  Therefore, the *Ray* decision does not establish that to obtain section 998 penalties from Bogdanovich, Calleja had to serve Bogdanovich with a second statutory offer.  (*See's Candies, Inc. v. Superior Court* (2021) 73 Cal.App.5th 66, 92 [" ' "[C]ases are not authority for propositions that are not considered." ' "].)

In sum, we hold that a personal representative of a defendant-decedent is bound by the decedent's failure to accept a plaintiff's section 998 offer within the statutory deadline for

26

doing so. We thus do not reach Bogdanovich's argument that the trial court erred in concluding the estate should be liable for the statutory penalties because Chavez's insurance carrier purportedly controlled the defense throughout the proceedings. (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 104 [" 'If the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion.' "].)

## C.      Bogdanovich Forfeited Her Argument That Calleja Failed To Substitute Bogdanovich for Chavez Under Probate Code Section 9370

Probate Code section 9370 provides:

"(a) An action or proceeding pending against the decedent at the time of death may not be continued against the decedent's personal representative unless all of the following conditions are satisfied: [¶] (1) A claim is first filed as provided in this part. [¶] (2) The claim is rejected in whole or in part. [¶] (3) Within three months after the notice of rejection is given, the plaintiff applies to the court in which the action or proceeding is pending for an order to substitute the personal representative in the action or proceeding. This paragraph applies only if the notice of rejection contains a statement that the plaintiff has three months within which to apply for an order for substitution. [¶] (b) No recovery shall be allowed in the action against property in the decedent's estate unless proof is made of compliance with this section." (Prob. Code, § 9370.)

In her opening brief, Bogdanovich argues, "Nowhere in the record does it show that [Calleja] complied with . . . Probate Code

27

[section 9370] to properly substitute [Bogdanovich]."[22] Bogdanovich asserts Calleja "never brought a motion as required by the Probate Code and never received an order from the trial court allowing [Bogdanovich] to be substituted in place and instead of . . . Chavez." Bogdanovich argues that in lieu of a motion under Probate Code section 9370, Calleja "filed a Doe Amendment amending the Complaint to add a different defendant by substituting [Bogdanovich for] Defendant Doe 3." According to Bogdanovich, because Calleja failed to comply with Probate Code section 9370, "the section 998 penalties should not be imposed against" Bogdanovich. (Boldface & capitalization omitted.)

Calleja contends Bogdanovich forfeited her argument that Probate Code section 9370 precludes an award of section 998 penalties against Bogdanovich because Bogdanovich never made that argument below.

In her reply, Bogdanovich does not claim to have argued below that Probate Code section 9370 precludes the award of statutory penalties. Instead, Bogdanovich maintains, "[Bogdanovich] asserted below that section 998 penalties should not be awarded against [her] as . . . Chavez's personal representative because she is a different party, she was not served with the statutory offer, Defendant Chavez was dismissed from the case by way of a Request for Dismissal, [Bogdanovich] was not 'added' as a new party until more than 3 years after the offer to . . . Chavez, and the judgment was against [Bogdanovich],

_____

[22] Although Bogdanovich cited Probate Code section *9700* in her opening brief, Bogdanovich acknowledges in her reply she had "[i]nadvertently referenced" that provision and intended to refer us to section *9370* of the Probate Code.

28

not . . . Chavez." Bogdanovich also appears to contend she could not have forfeited reliance on Probate Code section 9370 because "the issue is *probably* one of jurisdiction." (Italics added.)

" 'Ordinarily the failure to preserve a point below constitutes a [forfeiture] of the point. [Citation.]' " (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698 (*Meridian Financial Services, Inc.*).) To preserve an argument for appeal, an appellant must provide the trial court and the opposing party with "sufficient notice of the issue" to afford them an opportunity to address it. (See *Simplon Ballpark, LLC v. Scull* (2015) 235 Cal.App.4th 660, 668–670; see also *Meridian Financial Services, Inc.*, at p. 698 [" ' " 'In the hurry of the trial many things may be, and are, overlooked which could readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them.' " ' "].)

By failing to dispute Calleja's assertion in her appellate briefing that Bogdanovich failed to raise below noncompliance with Probate Code section 9370, Bogdanovich tacitly concedes she in fact did not raise that issue in the trial court. (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at pp. 773–774 [holding that the appellants "tacitly concede[d]" a point raised in the respondent's brief by "failing to dispute it in their reply"].) Even assuming arguendo Bogdanovich correctly identifies in her reply brief the contentions she raised in support of her motion to tax costs, her vague allusions to improper substitution fell short of affording the trial court and Calleja with sufficient notice that her argument was premised on Probate Code section 9370.

29

We acknowledge, "[T]he parties to a case cannot confer fundamental jurisdiction upon a court by waiver, estoppel, consent, or forfeiture," and "[d]efects in fundamental jurisdiction therefore 'may be raised at any point in a proceeding, including for the first time on appeal[.]' " (See *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 807 (*Quigley*).) There exists, however, a "presumption that statutes do not limit the courts' fundamental jurisdiction absent a clear indication of legislative intent to do so." (See *id.* at p. 808.)

Bogdanovich does not direct us to any evidence the Legislature intended Probate Code section 9370 to limit trial courts' fundamental jurisdiction to hear cases. Also, California appellate courts do not "blindly" apply provisions barring the entry of judgment "against a personal representative of a decedent's estate[ ] until the representative has been made a party by substitution," but instead require a showing of "prejudice to the parties because of lack of notice, lack of proper representation, or some other disadvantage." (See *Sacks v. FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 956–960 & fn. 4 [collecting cases and citing, inter alia, Prob. Code, § 9370].) That guidance strongly suggests Probate Code section 9370 does not restrict courts' fundamental jurisdiction. At least one leading secondary source has opined that the statutory restrictions on claims against the estate imposed by part 4 of division 7 of the Probate Code, e.g., Probate Code section 9370, are "not jurisdictional." (See Haning, et al., Cal. Prac. Guide: Personal Injury (The Rutter Group 2023) ¶¶ 5:74–5:75, citing, inter alia, Prob. Code, § 9002, subd. (b) [providing that the statutes codified "in this part" restrict a plaintiff's right to assert claims against a

personal representative]; see also fn. 19, *ante* [observing that Prob. Code, § 9370 is in part 4 of div. 7 of the Prob. Code].)

We thus conclude that Bogdanovich has not rebutted the interpretive presumption the Supreme Court recognized in *Quigley*—that the Legislature did not intend Probate Code section 9370 to deprive the trial court of fundamental jurisdiction.  (See *Quigley*, *supra*, 7 Cal.5th at p. 808.)  In sum, we conclude that Bogdanovich forfeited this claim of error by failing to raise it below.

### D.      Calleja Did Not Waive Her Right to Seek Section 998 Penalties from Bogdanovich

On July 22, 2021, Calleja filed a request for dismissal of five defendants without prejudice:  "Jose Chavez; Jeffrey Wong; Dan Kerr Trucking Inc.; Cougar Service Inc[.]; and Active Logistics Solutions Inc."  (Some capitalization omitted.)  Directly adjacent to the list of defendants in the request is the following text:  "Each Party to bear their own costs and fees."  The trial court clerk entered the requested dismissal on July 29, 2021.[23]

Bogdanovich contends Calleja "waived her rights to section 998 penalties" against Bogdanovich by filing the request for dismissal of Chavez with the aforesaid notation, "Each Party to bear their own costs and fees."  As a preliminary matter, we observe that Bogdanovich does not identify explicitly the standard of review applicable to her claim of waiver.  For the reasons set forth below, we reject Bogdanovich's waiver claim even under the de novo standard of review.

---

[23]  Calleja and Bogdanovich are the only parties to this appeal.

31

"Waiver means 'the intentional relinquishment or abandonment of a known right.' [Citations.] And whether there has been waiver is a question of fact. [Citation.] Waiver ' "always rests upon intent." ' [Citation.] The intention may be express, based on the waiving party's words, or implied, based on conduct that is ' "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." ' [Citations.]" (*California-American Water Co. v. Marina Coast Water Dist.* (2022) 86 Cal.App.5th 1272, 1292.) " ' "The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver' [citation]." ' [Citation.] 'Whether a waiver has occurred depends solely on the intention of the waiving party.' [Citation.]" (*In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 352.)

Assuming arguendo Bogdanovich's claim of waiver is subject to our independent review, that claim fails because Bogdanovich has not discharged her burden of establishing waiver by clear and convincing evidence. By the time Calleja requested Chavez's dismissal in July 2021, Chavez was deceased and Calleja had already joined Bogdanovich to the action in Bogdanovich's capacity as the administrator of Chavez's estate. We infer from these facts that Calleja requested the dismissal of Chavez simply because Bogdanovich's joinder had rendered Chavez's being a party defendant unnecessary. (See § 377.41 [providing in relevant part that "a pending action or proceeding against the decedent that does not abate [may] be continued against the decedent's personal representative"].)

Calleja correctly notes that if she instead filed this request for dismissal for the purpose of relinquishing or abandoning any of her rights against Chavez's estate, then this document "would have served to terminate the case in its entirety" by dismissing her claim for damages against the estate, "and there would have been no need for trial." Clearly common sense informs us that this was not Calleja's intention. We thus conclude that, by stating in the request for dismissal that each party would bear that party's own costs and fees, Calleja expressed her intention to waive those rights against only the other four defendants identified in the dismissal, to wit, Jeffrey Wong; Dan Kerr Trucking Inc.; Cougar Service Inc.; and Active Logistics Solutions Inc.

E.     **Bogdanovich Forfeited Her Challenge to the Trial Court's Award of Prejudgment Interest on Future Damages**

Bogdanovich contends that even "if section 998 penalties are allowed to be imposed on the personal representative of the decedent," the trial court nonetheless erred in awarding prejudgment interest on Calleja's future damages. (Boldface & capitalization omitted.) Although she acknowledges that Civil Code section 3291 "provides for interest on the 'judgment,' [Bogdanovich argues] the word 'judgment' in the statute is vague and should be interpreted narrowly." According to Bogdanovich, "[p]roviding some 5 years of prejudgment interest" on "future economic and non-economic damages[,] which by definition are those damages to be incurred *after the date of trial*," would be "a windfall for" Calleja.

In response to Calleja's contention that Bogdanovich forfeited this claim of error by failing to raise it below,

33

Bogdanovich "concedes she did not make this argument at the trial level." Bogdanovich nonetheless "contends the issue is one of law on undisputed facts and thus not forfeited on appeal or requests this Court to exercise its discretion to address the issue."

" '[M]erely because an issue is one of law[ ] does not give a party license to raise it for the first time on appeal . . . . Whether an appellate court will entertain a belatedly raised legal issue always rests within the court's discretion.' [Citations.]" (*Meridian Financial Services, Inc.*, *supra*, 67 Cal.App.5th at pp. 699–700.) Although Bogdanovich asserts "there is no case addressing this issue," Bogdanovich does not respond to the arguments Calleja raises in support of her position that Civil Code section 3291 authorizes an "award[ of] prejudgment interest on future damages." Because "[w]e do not serve as 'backup appellate counsel,' or make the parties' arguments for them" (*Inyo Citizens for Better Planning v. Inyo County Bd. of Supervisors* (2009) 180 Cal.App.4th 1, 14), we decline to exercise our discretion to excuse Bogdanovich's forfeiture.

## DISPOSITION

The December 16, 2021 order granting in part and denying in part appellant's motion to tax costs is affirmed. Respondent is awarded her costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.

We concur:


ROTHSCHILD, P. J.                    WEINGART, J.


34